MAYOR AND CITY COUNCIL OF BALTIMORE ᴇᴛ ᴀʟ. *v.* STUYVESANT INSURANCE COMPANY ᴇᴛ ᴀʟ.

[No. 335, September Term, 1960.]

*Order of Court filed July 6, 1961.*

*Opinion filed October 11, 1961, after partial reargument.*

The cause was argued on June 8, 1961, before HENDER-SON, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ., and re-argued on September 19, 1961, before the full Court.

*Blanche G. Wahl, Assistant City Solicitor of Baltimore* (on both arguments), with whom were *Harrison L. Winter, City Solicitor, Ambrose T. Hartman, Deputy City Solicitor,* and *William A. Hegarty, Chief Assistant City Solicitor,* on the brief, for the appellants.

*Stanford H. Franklin* (on both arguments), with whom were *Marvin Mandel* and *Mandel & Franklin* on the brief, for the appellees.

Brief of *amicus curiae* filed by *Howard H. Conaway* and *Shale D. Stiller* for the Bar Association of Baltimore City.

MARBURY, J., delivered the opinion of the Court.

This is an appeal by the defendants below from a final decree of the Circuit Court of Baltimore City (Sodaro, J.), dated January 10, 1961. The decree declared that Ordinance No. 437 of the Mayor and City Council of Baltimore, ap-

proved August 4, 1960, providing for the regulation of those engaged in the business of becoming surety for compensation in criminal cases, was invalid. The decree enjoined the appellants from acting under or enforcing the provisions of said ordinance, and required costs to be paid by the appellants.

The questions presented below and considered on this appeal are: (1) Did the Mayor and City Council of Baltimore have the authority under its police power to adopt Ordinance No. 437, regulating those engaged in the business of becoming surety for compensation in criminal cases; (2) is Ordinance No. 437 invalid because it provides for additional regulation by the Mayor and City Council of Baltimore of companies already holding licenses issued by the State of Maryland; and (3) does Ordinance No. 437 deny appellees the equal protection of the law?

The appellees filed their bill of complaint for a declaratory decree that Ordinance No. 437 is unconstitutional, arbitrary, discriminatory, and invalid, and prayed that the appellants be restrained and enjoined from acting under or enforcing it.

The appellants filed their demurrer and answer, and pending the outcome of litigation, agreed that they would not enforce the criminal provisions of the ordinance.

Since there was no dispute as to the material facts, and the questions involved being of law to be decided by the court, the parties agreed to submit the case to the court for decision on stipulations.

The appellees are all insurance companies licensed in the State of Maryland by the Insurance Department of the State under Code (1957), Article 48A and, as such, are authorized to engage in the insurance business and the writing of surety bonds within this State. Under such license the companies have been engaged in the writing of bail bonds in Maryland for varying periods of time prior to August 4, 1960, when the ordinance in question, passed by the City Council of Baltimore and approved by the Mayor of Baltimore, was enacted into the local laws of Baltimore City.

The ordinance adds a new section to be known as 21B to

Article 19 of the Baltimore City Code (1950 Edition), title "Licenses", to be under a new subtitle "Bail Bonds".

Its pertinent parts are as follows:

(a) Declares that the business and/or activity of becoming surety for compensation upon bonds in criminal cases is impressed with a public interest.

(b) Defines:

(1) "Bondsman" as any person, firm or corporation engaged in the business and/or activity of becoming surety for compensation on bonds in criminal cases or any agent, employee or representative of any such person, firm, or corporation.

(2) "Bond" as a corporate or individual bond or the placement of any form of collateral, including cash.

(3) The meaning of the term "criminal case" to include cases involving the violation of any traffic law, ordinance or regulation; the phrase "court having criminal jurisdiction" to include the Criminal Court of Baltimore City, the Traffic Court of Baltimore City, the Police Courts of Baltimore City, and the Magistrates or Justices of the Peace assigned to said courts, and shall include courts which take the place of or supplant the courts specifically mentioned.

(c) Prohibits any bondsman from giving anything of value to any "attorney at law, police officer, sheriff, jailer, probation officer, clerk or other attache of any court having criminal jurisdiction in Baltimore City, or public official, or employee, of any character, for procuring or assisting in procuring any person to employ said bondsman to execute as surety any bond for compensation in any criminal case". This subsection also prohibits any of the designated individuals from accepting anything of value from a bondsman for the proscribed purposes.

(d) Prohibits a bondsman from procuring or suggesting the employment of any attorney in a criminal case.

(e) Prohibits a bondsman from charging a defendant any fee in addition to the regular bonding fee and also prohibits a bondsman from attempting to procure the dismissal of any criminal proceeding.

(f) Requires that a typewritten or printed list alphabetically arranged for all persons engaged under the authority of

the Board of Bail Bond Commissioners shall be posted in all places of detention, and sets forth the requirements of the persons in charge thereof.

(g) Requires every bondsman within twenty-four hours after becoming surety to mail a copy of the surety bond or receipt or other document pertaining to any other form of collateral to the office of the Board of Bail Bond License Commissioners, herein created.

* * *

(i) Creates a five member Board of Bail Bond License Commissioners for Baltimore City who shall serve without compensation, but may be reimbursed for proper traveling and other expenses incurred in the discharge of their duties.

(j) Requires the Board to appoint an executive secretary at an annual salary of two thousand dollars ($2,000), and also such other employees, assistants and investigators at such compensation as may be provided in the budget from time to time.

(k) Prohibits any bondsman from doing business without securing a license issued by the Board of Bail Bond License Commissioners, which shall be exhibited at all times in the regular place of business of the licensee.

(1) Requires that any bondsman who, as of July 1, 1960, is required to secure a license as provided in sub-section (k) hereof, shall have until October 1, 1960, to secure a license from the Board in order to continue to do business, provided that any such bondsman having been engaged in business in a regular and bona fide manner for a period of six months or more prior to July 1, 1960, shall be issued a license, with no duty or examination other than to pay the regular license fee, but that such bondsman shall thereafter be subject to all the provisions of this sub-title, including the right to refuse a renewal of a license, and also the right to suspend or revoke an existing license. After July 1, 1960, no bondsman shall begin or engage for the first time in the business without securing a license and complying with all the provisions of this sub-title and of the rules and regulations promulgated and adopted thereunder.

(m) Requires an annual license fee of $250.00, payable in advance, with respect to every bondsman as principal, and

$100.00 annually for every person engaged as an agent, representative or employee of a principal.

(n) Requires the Board to refer all applicants for a license to the Police Commissioner for investigation of the applicant's character, and the Police Commissioner to submit his investigation to the Board, along with his recommendation as to whether the applicant should be accepted; and provides that the Board shall refuse to issue a license to any applicant where it finds that the moral character of the applicant is such that the issuance of a license would harm the administration of criminal justice in Baltimore City, or would be prejudicial to the general welfare of the residents of Baltimore City.

(o) Provides for the suspension or revocation of a license by the Board for any cause which would be sufficient for a denial of the license under sub-paragraph (n).

(p) Authorizes the Board to promulgate and adopt reasonable rules and regulations.

(q) Provides for appeal by any person aggrieved by the action of the Board in refusing to issue a license or in suspending or revoking a license to the Baltimore City Court, and a further right of appeal to this Court.

(r) Exempts from this sub-title the licensing of a motor vehicle liability insurance company or carrier or a bona fide and recognized automobile club or association, which may secure or advise as to a bond for one of its customers or members as an incidental part of its main functions and any insurance company, or agent therefor, authorized by the State Insurance Department of Maryland and which has capital stock of not less than Five Hundred Thousand Dollars ($500,000) and approved assets of at least Five Hundred Thousand Dollars ($500,000) in excess of its capital stock, reserves and all other liabilities. This subsection further provides that: "Any provisions of this sub-title (other than the licensing provisions) which define criminal offenses or impose criminal penalties are effective without exception as to any such company, carrier, club, association or agents."

(s) Provides that the violation of any of the above provisions shall constitute a misdemeanor, punishable by a fine

of not more than One Thousand Dollars ($1,000), imprisonment of not more than two years, or both.

After the original argument in this court we filed an order dated July 6, 1961, wherein we stated that this court was of the opinion that the licensing provisions of Ordinance No. 437 applicable to the complainants appellees, and other insurance companies authorized under Code (1957), Article 48A, to conduct a surety business in this State, are invalid as in conflict with said Article of the Code; affirmed the decree of the Circuit Court for Baltimore City insofar as it declares said licensing provisions of said ordinance to be invalid, and set this case for reargument before the whole court as to the validity of other provisions of said ordinance. We now set forth our reasons for holding the licensing provisions of the ordinance invalid as to the appellees and decide the validity of the other provisions of the ordinance which are regulatory in character.

Undoubtedly, the nature of the bail bond business makes it clearly a proper subject for police regulation. The business of professional bondsmen affords peculiar opportunity for fraud and imposition upon the persons whom they serve. Such business may be so conducted as to seriously interfere with the fair and proper administration of the criminal laws. 123 A.L.R. 1215; *Jackson v. Beavers* (Ga.), 118 S. E. 751; *McDonough v. Goodcell* (Calif.), 91 P. 2d 1035.

The City of Baltimore would have the power to enact bail bond licensing legislation, provided such legislation is not in conflict with the Constitution of the State, or any Public General Law thereof. Section 6 (24) of the Baltimore City Charter provides that the Mayor and City Council of Baltimore shall have the power by ordinance or such other method as may be provided in its charter "to exercise within the limits of Baltimore City all the power commonly known as the police power to the same extent as the State has or could exercise said power within said limits * * *." As was said in *Rossberg v. State,* 111 Md. 394, 411, 74 Atl. 581, with regard to the police power of the City "broader or more comprehensive police powers could not be conferred under any general grant of police power * * *."

Limitations upon the police power of the City are found among the provisions of Articles XI and XI-A of the Maryland Constitution, the latter of which is often referred to as the Home Rule Amendment, and in the Baltimore City Charter.

Section 3 of Article XI-A provides in part that from and after the adoption of a charter by the City of Baltimore, the Mayor and City Council of Baltimore, "subject to the Constitution and Public General Laws of this State," shall have power to enact local laws of the City, but "in case of any conflict between said local law and any Public General Law now or hereafter enacted, the Public General Law shall control."

Likewise, Section 6 (24) *supra,* provides, among other things, that the City shall have all the powers specifically enumerated in said Section 6, but "subject to the provisions of said Constitution and Public General Laws."

These limitations are clear and unmistakable. So that if a local law or ordinance conflicts in any manner with the Constitution or a Public General Law, the local law or ordinance is invalid to the extent of such conflict.

The test is precisely stated in *Rossberg v. State, supra,* at page 416, decided in 1909, several years before the Home Rule Amendment and the Baltimore City Charter adopted pursuant thereto, in which it was said that "ordinances which assume directly or indirectly to permit acts or occupations which the State statutes prohibit, or to prohibit acts permitted by statute or Consitution, are under the familiar rule for validity of ordinances uniformly declared to be null and void."

In *Heubeck v. Baltimore,* 205 Md. 203, 107 A. 2d 99, this Court struck down as invalid a rent control ordinance on the ground that it was in conflict with a Public General Law, and as between the two, the Public General Law prevailed.

Article 48A of the Annotated Code of Maryland, entitled "Insurance", imbodies a code of insurance laws for the State of Maryland, including Baltimore City, and specifically provides for licensing insurance companies to do business in this State, and authorizes the Insurance Commissioner to promulgate rules and regulations governing the conduct of the insur-

ance business. It is agreed that no rules or regulations governing the bail bond business have been issued.

Section 1 of this Article defines insurance business or business of insurance, and states therein that insurance business means and embraces among other things: "* * * the issuing of any bond insuring the fidelity of any person, the performance of any contract, act, trust or thing; and any obligation or undertaking of any kind or nature whatsoever insuring against or undertaking to indemnify any person for loss resulting from any contingency, hazard or casualty; * * *."

Clearly, the writing of bail bonds by corporate sureties comes well within this definition.

Moreover, Section 219 of Article 48A makes it mandatory on all courts, judges, heads of departments, municipalities, etc., to accept the bond of any company authorized by the State of Maryland to write said surety bonds in this State.

It is thus clear that Ordinance No. 437 attempts to prohibit what Section 219 permits, unless a license is first obtained and all of its provisions are complied with.

Furthermore, Section 43 of Article 48A, subtitled "Prohibition against local licenses" prohibits any county or city of this State from requiring any insurance company, or any of its agents or solicitors, or any insurance broker, or the solicitor of any insurance broker, to obtain a certificate of authority or license to transact in such county or city any business which it or he is authorized to transact therein under a certificate of authority or license issued to it or him under this Article, or levy any occupational tax or fee for transacting any such business.

Here again Ordinance No. 437 attempts to do that which is specifically prohibited under Section 43, by requiring these insurance companies to obtain a license to transact in Baltimore business which they are authorized to transact under a certificate of authority or license issued to them under Article 48A.

It is, therefore, clear that this Public General Law, (Art. 48A, Sec. 43), must be held to prevail over Ordinance No. 437 insofar as its licensing provisions affecting the appellees are concerned. Having reached this conclusion we do not find

it necessary to consider the Constitutional question of whether Ordinance No. 437 denies to the appellees equal protection of the law.

In so holding we do not intimate that the licensing features of the ordinance are invalid as applied to cash or property bondsmen, which are the other classes of bail bondsmen not included in the class of corporate sureties. The General Assembly in enacting Article 48A has preempted the legislative field of licensing corporate sureties engaged in the bail bond business. It has, by Section 12 of the Article, also authorized the regulation by the insurance commissioner of these companies.

On the other hand the State has never undertaken by any public general law to license or regulate cash or property bondsmen, which means that both the licensing and regulatory provisions of Ordinance No. 437, as applied to these classes of bondsmen, appear on their face to be free from any conflict with any general law and are a valid exercise of the police power by the Mayor and City Council.

We come finally to the question of whether the licensing provisions of Ordinance No. 437, which have been held invalid as to the appellees, are severable from the regulatory provisions, and whether the latter are applicable to the appellees, as well as all other bail bondsmen generally.

It is the duty of a court to separate the valid from the invalid provisions of an ordinance, so long as the valid portion is independent and severable from that which is void. *Schneider v. Duer,* 170 Md. 326, 184 Atl. 914. Notwithstanding the fact that Ordinance No. 437 contained no severability clause, as this court pointed out in the *Schneider* case, *supra,* p. 336, the effect of such a clause is "merely declaratory of an established canon of construction recognized by this court." Even had there been a severability clause, in the words of Justice Brandeis, it would have been "an aid merely, not an inexorable command." *Dorchy v. Kansas,* 264 U. S. 286, 290.

In *Large v. City of Elizabethton,* (Tenn.), 203 S. W. 2d 907, it was held that despite the alleged invalidity of the portion of an ordinance requiring all taxicab operators to obtain a license, the remainder of the ordinance regulating the

taxicab business was valid. Other cases involving licensing ordinances wherein the validity of part of the ordinance did not invalidate the entire ordinance are *Richardson v. Coker* (Ga.), 3 S. E. 2d 636; *Town of North Hempstead v. Colonial Sand & Gravel Co.,* 178 N. Y. S. 2d 579; *McPhee & McGinnity Co. v. Union Pac. R.R.,* 158 Fed. 5; *Staats v. Washington,* 45 N. J. L. 318; *Vinsonhaler v. People* (Colo.), 108 Pac. 993; *Provident Loan Soc. v. City of Denver* (Colo.), 172 Pac. 10; *Minces v. Schoenig* (Minn.), 75 N. W. 711.

The fundamental rule as to severability is perhaps best stated by Judge Cardozo as follows:

> "In this state, we have gone far in subdividing statutes, and sustaining them as far as valid. * * * The tendency is, I think, a wholesome one. Severance does not depend upon the separation of the good from the bad by paragraphs or sentences in the text of the enactment. * * * The principle of division is not a principle of form. It is a principle of function. The question is in every case whether the Legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether. The answer must be reached pragmatically, by the exercise of good sense and sound judgment, by considering how the statutory rule will function if the knife is laid to the branch, instead of at the roots." *People ex rel. Alpha Portland Cement Co. v. Knapp* (N. Y.), 129 N. E. 202, 207.

In determining the question of severability we must ask: would the City Council have enacted the ordinance if it knew that part of the ordinance was invalid? See *Heubeck v. City of Baltimore, supra.* We think the evils aimed at such as those dealt with in subsections (c), (d) and (e) of the ordinance were of sufficient magnitude and pressing moment so that the City Council would have constituted them as criminal offenses regardless of whether the entirely separate licensing procedure was enacted. These provisions apply to *all* bondsmen, regardless of whether they are licensed or not.

The Maryland case nearest in point is *Billig v. State*, 157 Md. 185, 145 Atl. 492. That case involved the validity of a Baltimore City ordinance, under which auctioneers, licensed by the state, were required to comply with certain requirements concerning times, places and manner of conducting auction sales in Baltimore City, and provided a penalty for violation. Suit was brought to declare the ordinance void, on the ground that inasmuch as auctioneers were already licensed by the state, the city had no power to regulate auctioneers further. This court upheld the validity of the ordinance, and stated at p. 192:

> "If section 242 of the statute does declare that an auctioneer, after paying the license fee and executing the prescribed bond, 'may make sales of every description of goods, wares and merchandise of every kind and real estate,' the general language used was qualified by the necessarily implicit condition that such sales be not in violation of any subsisting or future statute or ordinance which was in force, or might thereafter be enacted by the Legislature or passed pursuant to the police and other powers delegated to the municipality. It would be an arbitrary and unwarranted construction to ascribe to this revenue statute the legislative intent to deny to the municipality the power to exercise its delegated police power to the same extent as the State has or could within its municipal limits. Baltimore City Charter (1927), pp. 26, 22. If, therefore, the municipality, from time to time, in the due exercise of its delegated powers, regulates or limits the public auction of certain goods or wares, the ordinance is wholly consistent with the language of the statute. *Holsman v. Thomas*, 112 Ohio St. 397. See *Baltimore v. Bloecher & Schaaf*, 149 Md. 648; *Portsmouth Stove & Range Co. v. Baltimore*, 156 Md. 244; *Rossberg v. State*, 111 Md. 394; *State v. Stewart*, 152 Md. 419, 425, 426."

We conclude that Ordinance No. 437 is valid in its entirety

as it applies to persons in the bail bond business who are not licensed as corporate sureties by the State of Maryland; and that it is valid as to those corporate sureties, their agents or solicitors who hold licenses issued by the State, to the extent of the other regulatory and penal provisions of the ordinance.

> *Decree affirmed in part and reversed in part, and case remanded for the passage of a decree in conformity with this opinion, each side to pay one-half of the costs below and on this appeal.*