## ANNE ARUNDEL COUNTY, MARYLAND
### *v.* MOUSHABEK ET AL.

[No. 84 (Adv.), September Term, 1973.]

*Decided July 5, 1973.*

420

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Ira J. Wagonheim* and *John M. Court, Assistant County Solicitor,* with whom was *Paul F. Borden, County Solicitor,* on the brief, for appellant.

*Jay I. Morstein,* with whom were *Stephen H. Sachs* and *Frank, Bernstein, Conaway & Goldman* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

We are here presented with the question of whether amendments to an Anne Arundel County zoning ordinance were properly adopted and, if not, whether their invalidity vitiates the entire zoning ordinance. We shall answer both questions in the negative.

On October 2, 1972, the County Council (the council) of Anne Arundel County (the county) adopted Bill No. 136-72, a comprehensive zoning ordinance for the northern portion of the third assessment district of that county. A public hearing on the ordinance had been held on September 18, 1972. After the hearing a number of amendments to the bill were proposed by various council members. At the October 2 meeting at which the ordinance was adopted by the council, 97 of those amendments were also adopted. The county executive approved and signed the bill, after first vetoing 34 of the amendments pursuant to the item veto provisions of the county charter. The council sustained 14 of the vetoes and overrode 20.

The problem here arises under § 307 (e) of the county charter. In setting up the procedure for passing ordinances it provides in pertinent part:

> "Not later than the next calendar day following the introduction of a bill the Chairman of the Council shall schedule a public hearing thereon which shall not be less than seven days after its introduction; provided that the Council may reject any ordinance on its introduction without a hearing by a vote of five members. The hearing may, but need not be, held on a legislative session-day and may be adjourned from time to time. *After the public hearing as herein provided, a bill may be finally passed on a legislative session-day with or without amendment, except, that if a bill is amended before final passage and the amendment constitutes a change of substance, the bill shall not be passed until it is reprinted or reproduced as amended and a hearing shall be set thereon and proceedings had as in the case of a newly introduced ordinance."*
> (Emphasis added.)

The subsection further provides that it "shall not be applicable to emergency ordinances and the annual budget and appropriation ordinance of Anne Arundel County . . . ." This was not an emergency ordinance. It is conceded that no

hearing was held by the council between the time of adoption of the amendments and final passage. The key question, therefore, is whether these were amendments "of substance." There is no contention that the charter provision here is anything other than mandatory if these amendments are found to be amendments "of substance."

The appellees are owners of real property in the area rezoned by the ordinance. They sought, successfully, in the Circuit Court for Anne Arundel County to strike down the ordinance by reason of the claimed procedural defect. The chancellor in his opinion made no reference to the question of severability there and here raised by the county, apparently concluding that the procedural defect invalidated the entire ordinance.

Each and every one of the 97 amendments to the bill changed zoning for a particular area. The county's concept of the meaning of the term "change of substance" is a change outside the scope of the title. It points out that this ordinance was intended to apply to the third assessment district. It says that if there had been an attempt to amend the ordinance by providing for zoning in a portion of the fourth district, this would have necessitated an amendment to the title of the ordinance and thus would be an amendment of substance. It then argues that the title of the ordinance is enough to place interested citizenry on notice that their property may be affected and they thus have the obligation to follow the path of the bill through the council. Alternatively, it suggests that the specific amendments complained of by the appellees concern approximately 342 acres of land out of more than 30,000 acres affected by the bill and thus suggests that the amendments do not constitute changes of substance.

The Anne Arundel County charter is to its legislative body as the Constitution of Maryland is to the General Assembly of Maryland. In *Legg v. Annapolis*, 42 Md. 203 (1875), Judge Alvey said for the Court:

"A valid statute can only be passed in the manner prescribed by the Constitution, and when the

provisions of that instrument, in regard to the manner of enacting laws, are wholly disregarded, in respect to a particular Act, it would seem to be a necessary conclusion that the Act, though having the forms of authenticity, must be declared to be a nullity. Otherwise the express mandatory provisions of the Constitution would be of no avail or force whatever." *Id.* at 221.

Hence, we must ascertain whether in this instance the council in enacting the ordinance complied with the provisions of the charter.

There may be a possible parallel between this charter provision and some of our criminal cases. Clerks of court for generations in accordance with Maryland Rule 714 and its predecessor statutes have said to grand juries, "Are you content that the Court shall amend matters of form, altering no matter of substance without your privity in those bills you have found?" On this subject Judge Horney said for the Court in *Lank v. State*, 219 Md. 433, 149 A. 2d 367 (1959):

"As to what constitutes substance and what is merely formal in an indictment, it may be said that all facts which must be proved to make the act complained of a crime are matters of substance, and that all else — including the order of arrangement and precise words, unless they alone will convey the proper meaning — is formal. 27 Am. Jur., *Indictments and Informations*, § 117." *Id.* at 436.

In *Corbin v. State*, 237 Md. 486, 206 A. 2d 809 (1965), Judge Marbury alluded to *Lank* and its holding. He then said for the Court:

"We have held in the past that a criminal charge must so characterize the crime and describe the particular offense so as to give the accused notice of what he is called upon to defend and to prevent a future prosecution for the same offense. [Citing cases.] Under the circumstances as presented here,

changing the name of the owner of the property constituting the subject matter of the crime charged was a change in form and not substance, since none of the essential elements of the offense was changed, and therefore the amendment was properly allowed and resulted in no prejudice to the rights of the accused. Annotation, 68 A.L.R. *Power of court to amend indictment,* p. 928." *Id.* at 490.

Another possible parallel is to be found in the holdings of our sister states relative to pleading. In *Barber v. Briscoe,* 8 Mont. 214, 19 Pac. 589 (1888), the court gave illustrations of an amendment of substance as:

"where some material allegation has been left out of the original complaint, as, for instance, in a suit to recover on a note payable at a certain place, the failure to allege presentation and dishonor at the place of payment; or, in a suit to recover damages for a malicious prosecution, the failure to allege malice, or that the prosecution was without probable cause, or that it had been terminated in favor of the plaintiff." *Id.* at 218-19.

In *Western Smelting Co. v. Benj. Harris & Co.,* 302 Ill. App. 535, 541, 24 N.E.2d 255 (1939), an amendment materially increasing the *ad damnum* was held to be an amendment of substance. *See also* 3 *Words and Phrases* (permanent ed. 1953) 471 "amendment of substance."

*Black's Law Dictionary* (4th ed. 1951) defines "substance" as:

"Essence; the material or essential part of a thing, as distinguished from 'form.' . . . That which is essential." *Id.* at 1597.

We find persuasive the language used by the New Jersey courts relative to a provision somewhat similar to the charter provision here. In New Jersey a statute (N.J.S.A. 40:49-2(c)) provides relative to certain ordinances:

"If any amendment be adopted, *substantially*

*altering the substance* of the *ordinance . . .,*"
(Emphasis added.)

certain procedures shall be followed. Their interpretation of that section strikes us as being in line with Black's definition and not inconsistent with our holdings in criminal matters. In *Wollen v. Fort Lee*, 27 N. J. 408, 142 A. 2d 881 (1958), a zoning ordinance was amended without following that procedure. The court there said:

> "The words are to be assessed in the context of the provision of which they are a part and the basic policy of the statute. 'Substance' in the statutory intendment has reference to the essential elements of the legislative act and the public policy of acts *in pari materia*. In relation to the altered use-classification of the tract itself, the establishment of a 'buffer' zone 50 feet wide for entrance ways and landscaping usable in part for off-street parking and garages was patently incidental to the fulfillment of the basic project, secondary or minor in a design for the highest and best use of the lands in the exercise of the zoning process. Compare *Manning v. Borough of Paramus*, 37 N.J. Super. 574 (*App. Div.* 1955), Jayne, J.A.D. And the 'enlarged restraint,' if such it be, imposes no burden on plaintiffs; they are not aggrieved. See *State v. Council of Newark*, 30 N.J.L. 303 (*Sup. Ct.* 1863). The statute has in view pragmatic considerations that would not be served by holding republication of the amendment requisite in these circumstances. The act is to be given a reasonable construction to advance the essentials of the avowed policy." *Id.* at 420-21.

Similar holdings are to be found in *Gilman v. Newark*, 73 N.J. Super. 562, 180 A. 2d 365 (1962), and *Inganamort v. Borough of Fort Lee*, 120 N.J. Super. 286, 293 A. 2d 720 (1972), *aff'd on other grounds* 303 A. 2d 298 (1973). In the latter case the court held opponents of an ordinance could not complain when an amendment to a rent control

ordinance reduced its effective period from three years to one, saying:

"If anything, plaintiffs are benefited by the change. Under these circumstances, the decreased time period cannot be deemed to be a substantive aspect of the ordinance. Accordingly, no substantial alteration of the *substance* of the ordinance has occurred." (Emphasis in original.) (Citing cases.) *Id.* at 296.

In *Prince George's County v. Beard,* 266 Md. 83, 291 A. 2d 636 (1972), we said:

"It must be assumed that the citizens of Prince George's County meant what they said in the language placed in the Charter and in the consequent allocation of powers between the executive and legislative branches. The oft quoted statement in *Thomas v. Police Commissioner,* 211 Md. 357, 127 A. 2d 625 (1956):

'It is a hornbook rule of statutory construction that, in ascertaining the intention of the Legislature, all parts of a statute are to be read together to find the intention as to any one part and that all parts are to be reconciled and harmonized if possible.' (Citing authorities.) *Id.* at 361.

is no less true of a county charter." *Id.* at 91.

It must be no less assumed that the people of Anne Arundel County meant what they said in the language they placed in their charter. In § 307(f) provision is made for passing emergency ordinances and for public hearing on such ordinances, but then it is provided that "[a]fter public hearing the bill may be passed with or without amendment . . . ." In *Ruark v. Engineers' Union,* 157 Md. 576, 585, 146 A. 797 (1929), Judge Parke said for the Court relative to the word "locality" that "whatever may be the scope of its varying significance, its meaning in a particular statute is susceptible of being determined from the context, since the

words of a statute are to be understood in the sense in which they best harmonize with the subject of the enactment and the objects which the legislature had in view."

Here we have a county charter which has required a public hearing on every ordinance, including emergency ordinances, a concept not found with reference to all legislative bodies. After hearing, an emergency ordinance may be passed with or without amendment, so the charter says, but a nonemergency ordinance must be "reprinted or reproduced as amended and a hearing shall be set thereon" if there is an amendment "before final passage and the amendment constitutes a change of substance." The obvious intent was for citizens to be informed and to have an opportunity to express themselves on all matters of importance, except only in the case of amendments to an emergency ordinance.

We adopt the definition of the New Jersey court that an amendment of " ' [s]ubstance' in the statutory intendment has reference to the essential elements of the legislative act and the public policy of acts *in pari materia,*" and the words must "be assessed in the context of the provision of which they are a part and the basic policy of the statute." Here the zoning classification for more than 300 acres of land was changed so that, as the chancellor noted, "[s]ome properties at first proposed as residential districts became commercial districts, multi-family districts, or industrial districts," with "[e]ven one parcel scheduled for deferred development [receiving] a commercial classification." For purposes of this case we need go no further in the spelling out of the application of this definition than to say we agree with the chancellor that the effect of the 97 amendments was a change of substance. They changed "the essential elements of the legislative act."

In this ordinance § 3 provided that if any of the provisions of the ordinance were "held invalid for any reason, such invalidity [should] not affect the other provisions or any other application of [that] Ordinance which can be given effect without the invalid provisions or application, and to [that] end, all the provisions of [the] Ordinance [were]

declared to be severable." We thus pass to the county's contention that this language should be made effective.

In deciding this point the test we must apply was stated for the Court by Judge Oppenheimer in *Sanza v. Md. Board of Censors*, 245 Md. 319, 226 A. 2d 317 (1967):

> "The presence of a severability clause raises a presumption of severability, but the clause is merely declaratory of an established rule of construction; it is 'an aid merely, not an inexorable command.' The test is, would the legislative body have enacted the statute or ordinance if it knew that part of the enactment was invalid? *City of Baltimore v. Stuyvesant Ins. Co.*, 226 Md. 379, 390, 391, 174 A. 2d 153 (1961); *City of Baltimore v. A. S. Abell Co.*, 218 Md. 273, 289-91, 145 A. 2d 111 (1958), and cases therein cited. In *Stuyvesant, supra*, we held the ordinance therein involved was separable and that, while parts were invalid, the remainder was valid, even though the ordinance contained no severability clause. In *Baltimore v. Abell Co., supra*, despite the presence of a severability provision, the Court held the Mayor and City Council would not have adopted the ordinances if it had known they could be only partially effectual." *Id.* at 338-39.

In *Baltimore v. A. S. Abell Co.*, 218 Md. 273, 145 A. 2d 111 (1958), Judge Prescott said for the Court:

> "The true test of separability is the effectiveness of an act to carry out, without its invalid portions, the original legislative intent in enacting it; and a saving clause will not be given effect where such invalid provisions affect the dominant aim of the whole statute." (Citing authorities.) *Id.* at 290.

In *Hagerstown v. Dechert*, 32 Md. 369 (1870), Chief Judge Bartol said for our predecessors:

> "A Statute may be good in part, while other parts

are invalid. If a portion be unconstitutional, the court is not authorized, for that reason, to declare the whole void. *State v. Davis*, 7 Md. 151.

"In *Commonwealth v. Hitchings*, 5 Gray, 482, where the same rule of construction was adopted, the court said: 'The constitutional and the unconstitutional provision may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand, though the last fall. The point is, not whether they are contained in the same section, for the distribution into sections is purely artificial; but, whether they are essentially and inseparably connected in substance.'

"We adopt that as a correct exposition of the law governing the court in the construction of Statutes." *Id.* at 384.

The answers to the questions set forth in our earlier decisions are readily found here by virtue of the nature of the amendments and the exercise of the item veto on those amendments by the county executive. As originally proposed § 1 of the ordinance referred to a number of maps "introduced simultaneously [t]herewith ...." It said they were "hereby approved and adopted, as hereinafter amended." Then followed the long series of amendments. Typical of the amendments is No. 4, one of those to which appellees specifically objected in their bill of complaint as affecting their property. It said:

"(4) MAP NO. Y13 BE, AND IT IS HEREBY AMENDED AS FOLLOWS, SAID AMENDMENT BEING DESIGNATED ON SAID MAP AS '(A8)':

CHANGE THE ANGEL'S FOODMARKET, INC., BODKIN PLAIN PROPERTY FROM C1A — NEIGHBORHOOD COMMERCIAL DISTRICT TO R1 — RESIDENTIAL DISTRICT, SAID PROPERTY BEING DESCRIBED AS FOLLOWS: BEING ALL OF THE PROPERTY OWNED BY ANGEL'S FOODMARKET, INC. AS RECORDED

IN THE LAND RECORDS OF ANNE ARUNDEL COUNTY, MARYLAND, LIBER 1449, FOLIO 309, LIBER 1531, FOLIO 100 AND OF LOT 103 OF BODKIN PLAINS AS RECORDED IN THE PLAT RECORDS OF ANNE ARUNDEL COUNTY, MARYLAND, ON PLAT 15, PAGE 24."

That amendment is but little different from No. 55, vetoed by the executive, which veto was sustained. It read:

"(55) MAP NO. R11 BE, AND IT IS HEREBY AMENDED AS FOLLOWS, SAID AMENDMENT BEING DESIGNATED ON SAID MAP AS '(F8)':

CHANGE THE FRED KAYLOR PROPERTY FROM C3 — GENERAL COMMERCIAL DISTRICT AND R1 — RESIDENTIAL DISTRICT TO W2 — LIGHT INDUSTRIAL DISTRICT, SAID PROPERTY BEING DESCRIBED AS FOLLOWS: BEING ALL OF THAT PROPERTY OWNED BY FRED A. KAYLOR AND RECORDED IN THE LAND RECORDS OF ANNE ARUNDEL COUNTY, MARYLAND, LIBER 424, FOLIO 158. TWO ACRES ± ON THE EAST SIDE OF RITCHIE HIGHWAY AND 850' ± SOUTH OF WISHING ROCK ROAD."

It is obvious that council and executive regarded these amendments as severable from the main body of the ordinance. Otherwise, the executive would not have vetoed some of the amendments and the council would not have sustained the veto to part, but not all, of those amendments. Had there been no amendments, the ordinance would have been complete as a vehicle for determining the permitted land uses in the district. As Judge Prescott put it for the Court in *Casey Dev. Corp. v. Mont. County*, 212 Md. 138, 148, 129 A. 2d 63 (1957), these parts "may be eliminated and the legislative intention easily carried out." Accordingly, the chancellor erred in not determining that the ordinance was severable. His declaratory decree should have spelled out the valid adoption of the ordinance, but specified that the

amendments were invalidly adopted and hence ineffective. To that extent, the decree must be modified.

> *Decree modified and as modified affirmed; appellant to pay the costs.*