## PATRICIA HOY ET AL. *v.* RALPH C. BOYD

[No. 608, September Term, 1978.]

*Decided June 6, 1979.*

The cause was argued before THOMPSON, MOORE and MACDANIEL, JJ.

*Robert B. Haldeman* and *Marilyn A. Koeppel* for appellants.

*Edwin A. Lechowicz,* with whom were *Lechowicz & Loney* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

At issue in this controversy is the zoning reclassification of approximately 67 acres in the northern portion of the third assessment district of Anne Arundel County from the R2 Residential District to the R1 Residential District (a lower density); and the grant of a special exception to permit a recreational campground on the property. After a hearing pursuant to the Anne Arundel County Zoning Ordinance, the zoning hearing officer issued an Order of denial. Upon appeal by the petitioners to the County Board of Appeals, the applications were granted by a divided vote, one member dissenting. Upon appeal by the protestants, residents of adjacent Pasadena, Maryland, the Circuit Court for Anne Arundel County (Williams, J.) affirmed the action of the Board of Appeals, finding "fairly debatable" the issue of mistake in the original zoning of the property. The protestants below appeal. For the reasons stated, we reverse.

I

The 67 acres here involved are located on the south side of Knollview Drive, 1,000 feet north of Bayside Beach Road in the Alpine Beach Subdivision of Anne Arundel County, with approximately 2,000 feet of frontage on the east and west sides of Alpine Beach Road. The site is partially wooded. The portion to the west side of Alpine Beach Road, somewhat more than one-half the total acreage, contains no structural improvements. The east side has approximately 400 feet of water frontage on the Patapsco River at the point where it enters Chesapeake Bay. This section of the property was used

for a number of years as a public bathing beach; and a number of vandalized structures formerly used as beach facilities repose there. The land area on the eastern boundary of the site fronts, for approximately 1,200 feet, on Boyd Pond. Beyond Boyd Pond is Bayside Beach, the nearest residential community.

The appellee, Ralph C. Boyd, became the contract purchaser of the acreage in 1970 but, because of extensive litigation, he did not acquire legal title to the property until January, 1977. Not long thereafter, these applications were filed. The zoning reclassification was essential because the property was zoned R2 and, under the Anne Arundel County Zoning Ordinance, a commercial recreational campground is permitted by special exception in only the RA and R1 districts. The appellee proposed the installation of approximately 250 campsites which would utilize about one-half of the property, in the area generally west of Alpine Beach Road. The remainder of the property would be used for recreational purposes, including bathing at Alpine Beach and boating at Boyd Pond.

The site was included in a comprehensive zoning for the northern portion of the third assessment district which commenced in 1971. Its somewhat complicated zoning history included six maps, as follows:

> FIRST: A "suggested map" dated October 4, 1971 formulated by the Office of Planning and Zoning, in which the entire property was designated R2.
>
> SECOND: A map recommended by the Planning Advisory Board dated June 19, 1972, as a result of "prefiles" [1] before the Board. Again, the site was designated R2.
>
> THIRD: A map adopted by the Anne Arundel County Council on October 2, 1972, effective December 21, 1972. The map split the property,

---

1. The record does not explain this term but it appears to refer to tentative requests for zoning classifications made by property owners prior to comprehensive zoning.

designating the west side of Alpine Beach Road R1 and the east side R2.

This was accomplished by Amendment No. 7 of Bill No. 136-72, a legislative enactment which was the subject of a court challenge. In the case of *Anne Arundel County v. Moushabek,* 269 Md. 419, 306 A. 2d 517 (1973), it was held that 83 amendments to the bill, adopted by the Council on the day of the enactment of the ordinance, were invalid because no hearing on the amendments had been held as required by Section 307 (d) of the County Charter. The court ruled, however, that the ordinance was severable from the invalidly adopted amendments.

FOURTH: A "recommended map" dated May 8, 1973, preliminary to the reinstitution by the Council of the comprehensive zoning process, following the decision of the Court of Appeals in the *Moushabek* case. The previous R1 and R2 designations were retained for the subject property.

FIFTH: A map adopted by the County Council, as part of Bill No. 52-73, on May 8, 1973, again showing the site as R1 and R2.

This was an emergency bill designed to repeal what remained of Bill No. 136-72, and to re-enact it with the provisions of the 83 amendments stricken by the Court of Appeals in the *Moushabek* case incorporated directly into the text of the new law.

SIXTH: "Referendum Approved" map, effective November 5, 1974, in which the subject property was designated R2 in its entirety.

Emergency Bill No. 52-73 was not challenged in the courts as had been Bill No. 136-72. The opponents of the Council's new ordinance petitioned it to Referendum [2] and, on November 5, 1974, the voters

2. In *Ritchmount Partnership v. Board of Supervisors of Elections for Anne Arundel County,* 283 Md. 48, 388 A. 2d 523 (1978), the Court upheld the constitutionality of Article III, Section 308 of the Charter of Anne Arundel County, pursuant to which the referendum of Bill No. 52-73 was held. *See also* Anne Arundel County v. McDonough, 277 Md. 271, 354 A. 2d

of Anne Arundel County decisively rejected Bill No. 52-73. The combined effect of the litigation and the referendum was concisely stated by Judge Levine in *Ritchmount Partnership v. Board of Supervisors of Elections for Anne Arundel County:*

"As a result of our holding in *Moushabek,* Bill No. 136-72 in its unamended form became the operative law. It was this version of Bill No. 136-72 that the County Council attempted to repeal by emergency Bill No. 52-73 in July 1973. And consequently it was this unamended version of Bill No. 136-72 which was automatically reinstated after Bill No. 52-73 went down to defeat at the hands of the electorate in 1974." [3]

283 Md. 48, 65, 388 A. 2d 523 (1978).

In the proceedings below, the hearing officer found that no evidence of "change" was introduced and that the property owners' case became "one of mistake or error alone." On that issue, he found no evidence of mistake to support a reclassification from R2 to R1. On appeal, the County Board of Appeals received in evidence a recommendation of the Office of Zoning and Planning in which certain "considerations" concerning "change" and "mistake" factors

---

788 (1976) in which the court held that the notice requirements of the Maryland election laws were applicable to a referendum of 41 amendments to another comprehensive zoning ordinance and that the summaries of the referendum questions on the ballot did not conform to the requirements of the election laws.

A referendum involving piecemeal rezoning withstood constitutional challenge in *Eastlake v. Forest City Enterprises, Inc.,* 426 U. S. 668 (1976). That case involved the rezoning of an 8-acre parcel from industrial to multi-family high-rise use, in which the U. S. Supreme Court reversed the Ohio Supreme Court's determination that a mandatory referendum provision in the City Charter violated federal due process guarantees. *See generally* Comment, *Referendum Zoning: The State and Federal Issues and a Suggested Approach,* 60 Marq. L. Rev. 907 (1977), *reprinted in* 1 Zoning Law Anthology 783 (P. Saron ed. 1978); Comment, *Zoning — Adjudication by Labels: Referendum Rezoning and Due Process,* 55 N.C. L.Rev. 517 (1977), *reprinted in* 1 Zoning Law Anthology 911 (P. Saron ed. 1978).

3. This explains why the subject property reverted entirely to R2. As previously noted, the site was originally proposed for R2 but was divided into R1 and R2 by Amendment No. 7 of Bill No. 136-72.

were set forth. These included the statement that sewer service was anticipated during the comprehensive zoning process of 1971, to be available by 1981 for the area in which the subject site is located; but that the current sewer map adopted March 7, 1977 designated the area to be served between 1989 and 1997 and, therefore, "the R2 zoning . . . is based in part on misapprehension" and the revised projected date "would support a lower residential classification." The Office concluded therefore that it "would not be adverse to the granting of this application."

The Board's majority opinion reviewed the testimony of Ralph C. Boyd, one of the owners of the property, Joseph L. Peeler, Jr., a consulting engineer, and Gene E. Floyd, a real estate consultant and appraiser. The testimony of 12 opposing witnesses was also summarized, as was the testimony of Larry Burkins, principal zoning analyst for the Office of Planning and Zoning of the County. In its statement of findings, the majority considered "most significant" the weight given to the availability of public water and sewer in classifying low density residential property and stated that the updating of the sewer map, projecting sewer services for the area in the period 1989 to 1997, supported reclassification of the property to R1. The majority also wrote:

> "This board finds that zoning by referendum failed in this case to take into account the unique physical characteristics of this parcel. This constitutes error sufficient to change from R2 to R1."

With respect to the request for a special exception, the Board found that the application met the requirements of the County Code and ordered that the special exception to permit a recreational campground be granted subject to specified conditions. The dissenting member expressed the position that the evidence of mistake was insufficient to support the reclassification. Her dissenting opinion stated in part:

> "a)   Although the status of sewer has changed, in effect, *a possible error in the Master Plan for sewer does not constitute a mistake in zoning.*
>
> b)   Public sewer is not necessary for the Ra, R1 or

R2 Residential Districts, but is a requirement for R5 Residential Districts (Section 13-306)." (Emphasis added.)

The court below, in a written opinion, agreed with the protestants that there was no evidence of change in the neighborhood to justify the zoning reclassification. On the other hand, the court ruled:

"It is, however, clear from the record and particularly from those portions of the testimony quoted herein that there was testimony of *mistake in the original zoning* and that the Board was presented with facts that made the issue of mistake fairly debatable." (Emphasis added.)

It is from this finding that the protestants appeal.

## II

It is fundamental law in Maryland that to grant a zoning reclassification, the zoning authority must find evidence of mistake in the original zoning or comprehensive rezoning or that there has been substantial change in the character of the neighborhood. There is a strong presumption of the correctness of comprehensive rezoning. Consequently, the burden of proving mistake or change is a heavy one. *Stratakis v. Beauchamp,* 268 Md. 643, 652-53, 304 A. 2d 244 (1973); *Boyce v. Sembly,* 25 Md. App. 43, 49-50, 334 A. 2d 137 (1975). There is also a presumption of the correctness of piecemeal rezoning but it is "not so potent as the presumptions of comprehensive zoning or rezoning." *Bonnie View Country Club, Inc. v. Glass,* 242 Md. 46, 52, 217 A.2d 647 (1966). The scope of appellate review of zoning reclassifications is also well defined. Simply stated, "it is not the function of the courts to zone or rezone. . . ." *Germenko v. County Board of Appeals,* 257 Md. 706, 711, 264 A. 2d 825 (1970). Judicial review is limited to a determination of whether the evidence presented to the zoning authority made the question at issue "fairly debatable." *Offutt v. Board of Zoning Appeals,* 204 Md. 551, 562, 105 A. 2d 219 (1954).

Another rudimentary proposition, overlooked in the proceedings below — except by the dissenting member of the Board of Appeals [4] — and by the parties on this appeal, is that there is a vast difference between a master plan for sewer and a comprehensive zoning or rezoning. As Judge Levine stated for the Court of Appeals in *Pattey v. Board of County Commissioners,* "a master plan is only a guide and is not to be confused with a comprehensive zoning, zoning map, or zoning classification. [Citations omitted.] *It is a 'mistake' in the latter, not in the master plan, which may support a rezoning.*" (Emphasis added.) 271 Md. 352, 360-61, 317 A. 2d 142 (1974).

In *Pattey,* a large number of Worcester County residents appealed from a Circuit Court decision affirming zoning reclassifications of 1,870 acres of agricultural and conservation land located in the fourth election district of that County. The Circuit Court determined that the rezoning should be upheld on the basis of mistake as well as change. The Court of Appeals reversed. On the issue of mistake, the Court noted that the error on which the trial court had predicated its decision "was that made by the planning consultant in recommending that 'too much land [be] reserved under an agricultural classification.'" As a result, the opinion of the Court continued, "the trial court took the planners to task rather than the county commissioners, who adopted the agricultural and conservation classifications for the subject property in 1965." *Id.* at 360.

There is a clear parallel between the so-called mistake, vehemently litigated by both sides on this appeal, and the "error" which the court rejected in *Pattey.* Here, the mistake claimed by the appellee, as applicant for a local map amendment and a special exception, was predicated upon projections contained in the master plan for sewer for the area of Anne Arundel County in which the subject property is located. These projections, we glean from the record, originated in the Office of Planning and Zoning. During the comprehensive rezoning process which commenced in 1971,

---

4. *See* pages 532-33, *supra.*

the sewer map adopted by the County Council on December 15, 1969, revised as of September 1, 1971, showed that the area in which the subject property is located was anticipated to be served by 1981. The sewer map which was current at the time of the applications below, was adopted March 7, 1977 and changed the period of projected service to between 1989 and 1997. It was upon this basis that the appellee's expert consultant and appraiser, Gene E. Floyd testified — albeit with some ambivalence — that the existing R2 zoning classification was a mistake, on the theory that R2 carried with it a presumption of sewer availability.[5] The basis for the theory expressed by Mr. Floyd, that R2 carries with it a presumption that sewer is available, is not disclosed in the record. He said:

> "[T]he utility situation, when this was made up, suggested that the utilities were to be available in a five year plan. I must add that that is incorrect. . . .
>
> * * *
>
> Whether it is change, error — it is a matter of semantics. Whatever you want to call it, obviously, the Council did not, in 1972, have the insight to know that sewer was not going to be available in 1977 or 1980, and it was going to be moved back. It doesn't meet an R-2 as set out by the Council in their normal deliberations."

Similarly, Larry Burkins, the County's principal zoning analyst, Office of Planning and Zoning, testified that the County Council and the Office of Planning and Zoning when "going into the comprehensive zoning process, tries (sic) to establish trends and projections of when things will occur." In response to a question as to whether the information with respect to sewer was incorrect, or represented a change, he replied:

> "*Now it is a mistake in that our projections or trends were off.* It is a change, in that the change

---

5. According to the testimony of Mr. Peeler, appellee's consulting engineer, R2 zoning would permit two dwelling units per acre. Mr. Floyd testified that with utilities, R2 would permit a density of 2½ units per acre. R1 permits one dwelling unit per acre.

— although it is not an actual physical change, it is a change in policy or whatever determines what area will be sewered or what area is feasible to be sewered." (Emphasis added.)

That the Board of Appeals relied substantially upon the master plans for sewer is evident from its finding that "most significant is the weight given to the availability of public water and sewer utilities in classifying low density residential property." That the Circuit Court placed heavy reliance upon the expert opinions of Mr. Floyd and Mr. Burkins in finding the issue of mistake "fairly debatable" is clear from the court's opinion and the extensive quotations from their testimony contained therein.

We recognize that expert testimony, as well as a technical staff report of a planning agency, may constitute probative evidence in a hearing upon an application for a zoning reclassification which may be sufficient to make the issue of mistake or change fairly debatable. *Montgomery v. Board of County Commissioners,* 263 Md. 1, 8, 280 A. 2d 901 (1971); *Surkovich v. Doub,* 258 Md. 263, 272, 265 A. 2d 447 (1970). However, as Chief Judge Prescott stated for the Court of Appeals in *Miller v. Abrahams*:

"[A]n expert's opinion is of no greater probative value than the soundness of his reasons given therefor will warrant."

239 Md. 263, 273, 211 A. 2d 309 (1965).

In the instant case, it is quite plain that the experts based their testimony of mistake upon a false premise, failing to distinguish between a master plan for sewer, which is only a guide and subject to change, and a comprehensive zoning ordinance. *See Pattey v. Board of County Commissioners,* 271 Md. at 360, *citing Nottingham Village v. Baltimore County,* 266 Md. 339, 354-55, 292 A. 2d 680 (1972), *Chapman v. Montgomery County,* 259 Md. 641, 644, 271 A. 2d 156 (1970), *Board of County Commissioners v. Edmonds,* 240 Md. 680, 685, 215 A. 2d 209 (1965).

Furthermore, it is fundamental that the evidence before the zoning authority to support a reclassification based upon

mistake must establish that the mistake was "basic and actual" and made " '*at the time*' the property was zoned. . . ." [6] *Pattey v. Board of County Commissioners,* 271 Md. at 361. In addition, "the 'mistake' alleged to have occurred must relate to the *specific property* for which the zoning is sought, and may not consist of generalities." *Id.*

Applying these standards, we find error in the proceedings below for another fundamental reason. There is no evidence in the record of "basic and actual" error at the time the property was zoned in 1972. It is presumed that the placement in 1971 of these 67 acres — as well as an undetermined amount of additional acreage — in a ten-year program, represented a reasonable, prudential judgment, *at that time,* on the part of the planners and the County Council.

The record does not document the reasons for the subsequent change in the master plan for sewer. We deem it a fair inference, however, that growth and development factors between 1971 and 1977 led logically to a revision of the sewer guidelines in 1977, postponing by 8 to 16 years proposed service to the area in which the 67 acres are located. This modification of sewer programming might well have motivated the Board of Appeals to deny a reclassification of the subject property to some higher density — particularly to R5 which requires sewer — had such a reclassification been sought, *Montgomery County v. Pleasants,* 266 Md. 462, 467, 295 A. 2d 216 (1972); but it does not substantiate a claim, in a piecemeal down-zoning proceeding, that a mistake was made at the time of comprehensive zoning when the property was zoned R2.[7] Evidence sufficient to overcome the correctness of the comprehensive zoning was not adduced. *See Boyce v. Sembly,* 25 Md. App. at 52.

---

**6.** Both appellants and appellee take the position in their briefs that the zoning was accomplished by the referendum in 1974. We think this is inaccurate in the light of the holding of the Court of Appeals in the *Ritchmount* case, that the 1972 "unamended version" of Bill No. 136-72 was "automatically reinstated" by the referendum of Bill No. 52-73. 283 Md. at 52.

**7.** As previously noted, the property was divided by the County Council into R1 and R2, west and east, respectively, of Alpine Beach Road, under the invalidated amendment to Bill No. 136-72. Under the circumstances of the successful court challenge to all the amendments, and the successful referendum of the emergency legislation incorporating the amendments, the attempted division of the tract into R1 and R2 is not relevant.

Since we find no basis for the claim of mistake and there is no contention that the zoning classification may be justified on grounds of change, the action of the lower court and of the County Board of Appeals must be reversed.[8]

> *Judgment reversed; case remanded for entry of an order reversing the decision of the County Board of Appeals for Anne Arundel County; appellee to pay the costs.*

---

8. Although not in effect at the time of the proceedings below, we observe that the provisions of subsection (b) of Anne Arundel Council Bill No. 53-78, enacted on July 18, 1978, reflect this conclusion. That subsection, codified in Sec. 13-400, Title 13, Planning and Zoning, Subtitle 4, General Development Plan, Anne Arundel County Code (1967 Ed. and Supp.), reads as follows:

> "(b) The adoption, amendment or repeal of any documents listed in subsection (a) of this section [General Development Plan, documents to be used as a guide in the future development of land] shall not be construed to evidence or constitute mistake in the zoning map then existing or change in the character of any neighborhood."