## ABRAHAM J. BILLIG *v.* STATE OF MARYLAND.
[No. 49, January Term, 1929.]

*Decided April 2nd, 1929.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE and SLOAN, JJ.

*Isaac Lobe Straus,* with whom were *Daniel C. Joseph* and *Abram C. Joseph* on the brief, for the appellant.

*Herbert Levy, Assistant Attorney General,* with whom were *Thomas H. Robinson, Attorney General, Herbert R. O'Conor, State's Attorney for Baltimore City* and *John A. Sherman, Jr., Assistant State's Attorney for Baltimore City,* on the brief, for the State.

PARKE, J., delivered the opinion of the Court.

The Mayor and City Council of Baltimore passed an ordinance which became effective on December 1st, 1927, and Abraham J. Billig, a licensed auctioneer of Baltimore, was indicted, convicted, and sentenced for its violation by the sale at public auction in his auction room in Baltimore of two cuff links, two collar buttons, and a collar pin, for ten or twenty cents to the prosecuting witness.

The ordinance in question made it unlawful for any person, persons, or corporation to sell, dispose of, or offer for sale, or to cause or permit to be sold, disposed of or offered for sale, in the City of Baltimore, at public auction, any gold, silver, plated ware, precious stones, watches, clocks, or jewelry, whether the same shall be their own property or they sell the same as the agents or employees of others, provided that its provisions should not apply (1) to judicial sales by executors or administrators; (2) nor to sales by or on behalf of licensed pawnbrokers of unredeemed pledges in manner provided by law; (3) nor to a sale at public auction of the stock on hand of any person, persons, or corporation that shall for the period of one year next preceding such sale have been continuously in business in the City of Baltimore as a retail or wholesale merchant of such goods, wares or merchandise, and that shall, also, have held a trader's license for such business during said period, if such merchants strictly comply with the following conditions:

(a) The public auction must be held on successive days, excepting Sundays and legal holidays, and shall not continue for more than thirty days in all, and a period of at least three hundred and sixty-five days must have elapsed after the conclusion of any auction sale, conducted either before or after the enactment of this ordinance, before another auction sale shall be commenced by the same merchant.

(b) The auction must be held only between the hours of 8 o'clock A. M. and six o'clock P. M.

(c) The auction must be held either at a place at which the merchant conducted the jewelry business in Baltimore

for the period of at least ninety days immediately prior to the commencement of said auction sale or at the regular and usual auction rooms of some duly licensed auctioneer, and at no other place or places.

(d) Not more than fifteen nor less than ten days before beginning any such sale, such merchant must file with the police commissioner of Baltimore City a statement duly subscribed and verified by oath setting forth the name and address of the merchant so intending to conduct the sale; the place or places at which for the year next preceding said date of sale the merchant has conducted his or its business; the dates on which the merchant secured a trader's license for said business, and the location, purpose and duration of the sale; the name and address of the auctioneer who will conduct the sale; and including an inventory showing in detail the quality, quantity, kind or grade of the goods, wares and other articles proposed to be sold, and stating that no items or articles belonging to any other person or corporation than the merchant are included in the inventory.

(e) At least two days before the beginning of the sale, the auctioneer named in the aforesaid statement shall file with the police commissioner an affidavit, subscribed and sworn to by him, referring to said statement and setting forth that he has been employed to conduct the sale as set forth therein; and that he will keep a true record of any and all lots or items sold at said sale, and the prices obtained. Within ten days after the conclusion of the sale, the auctioneer shall over his signature and verified by his oath make such report including therein a certificate that no articles had been sold which were not included in the statement.

(f) No items or articles not set forth in the statement and inventory filed by such merchant in accordance with the provisions of subsection (d) shall be sold or offered for sale at said auction; and all articles so sold must be sold as the property of and under the name of the merchant so conducting the sale, and during the conduct of such sale a sign or signs must be maintained at the place of sale so as to be plainly

visible to persons attending the sale and to show the name and address of the merchants whose goods are being sold.

(g) Except where the sale is being conducted at the auction room of a duly licensed auctioneer, no business other than the jewelry business which had been conducted for the period of ninety days immediately prior to the commencement of said auction sale shall be conducted or engaged in, at, and in the place of sale, during the period the sale is there being made.

(h) For the purpose of the ordinance, if any person, persons or corporation should in any manner divide or separate that part of a building used for the purpose of sale, repair or dealing in gold, silver, plated ware, precious stones, watches, clocks or jewelry, and so holding a trader's license for such business, from the remaining part of the same building, then said entire premises so diverted or separated shall be construed and defined as "place."

The penalty denounced against the violation of the ordinance is ten dollars for the first offense, and twenty dollars for every subsequent offense; and every separate sale, at public auction, of any of the articles mentioned, is a distinct offense.

The tedious statement of the ordinance at bar is necessary because of the questions raised by this appeal. A similar ordinance was before this court in *Mogul v. Gaither*, 142 Md. 380, 383. In that case the ordinance had been passed by the Mayor and City Council of Baltimore for the same purpose as the present enactment, and its language and provisions were substantially identical with the ordinance at bar, except that the provisions embraced in subsections (b), (c), (d), (e), (f), (g) and (h) are not contained in the original municipal legislation. However, these additional provisions are regulatory and ancillary requirements of a general and reasonable nature, well designed to secure the primary object of the ordinance, and do not raise any question which was not before the court in *Mogul v. Gaither, supra*. In that case, it was determined that the ordinance was constitutional, and that its enactment was a reasonable exercise of the legislative

power delegated to the municipality. The doctrine of *stare decisis* would make this decision conclusive authority in support of the validity of the statute, if the point now made by the traverser had been taken and examined, but in *Mogul v. Gaither, supra,* this point was neither urged nor decided, although it could as well have been raised on that appeal as now. The new point made by the accused is that he is a licensed state auctioneer in Baltimore City, and that the municipality had no power by ordinance to impair or affect the revenues of the State under its Public General Law relating to State auctioneers and auctions in Baltimore City. In short, the argument is that the ordinance is void because it is in conflict with a revenue law of the State.

The Public Local Laws of Baltimore City relating to auctioneers (Baltimore City Charter, 1927, sub-title "Auctions" sections 235 to 278) is a revenue measure which Baltimore City has no power to repeal by virtue of Article 11A (Home Rule Amendment) of the Constitution, since the sections in question were not a public local law of Baltimore City, but a public general law designed to produce revenue for the State. *Gaither v. Jackson,* 147 Md. 655, 667. From this position as a basis, the traverser argues that, although the ordinance in question may be free of any constitutional objection and may be a proper exercise of the powers expressly delegated by the Legislature to "regulate all businesses, trades, avocations or professions," and "to have and exercise within the limits of the City of Baltimore all the power commonly known as the police power to the same extent as the State has or could exercise said power within said limits" [Baltimore City Charter (1927) pp. 22, 26], yet the ordinance at bar is void because it, by implication, is said to be in conflict with the public general law found in the Public Local Laws of Baltimore City under the sub-title "Auctions," *supra.*

An examination of all the sections of this subtitle fails to disclose any explicit or direct conflict with the provisions of the ordinance. The statute, although operating locally, is a public general law which deals with revenues of the State

to be derived from licenses and duties laid upon the proceeds of sales at public auction. But the subject matter of the ordinance is a local police measure. Without any repugnancy in language or purpose, a conflict between two such generically different enactments, each operating in its particular field, is difficult to conceive. The traverser replies that the ordinance in question restricts the general privileges of auctioneers in Baltimore City as conferred upon them by the State, and, by so limiting the public auction of jewelry to prescribed circumstances and conditions, diminishes to this extent the scope of an auctioneer's business and "potentially reduces the revenues" which the state law providing for the appointment and licensing of auctioneers in Baltimore City intended should be derived from their professional privileges and business. In short, to gratify the contention of the traverser, the court would have to create a new rule of statutory construction. Instead of seeking to bring statute and ordinance into a harmonious and effective whole, the traverser would make it a duty to find irreconcilable differences in legislative acts by the possibility of a police law reducing, in any degree, the yield of revenue from a fiscal measure. This would be too unsound, uncertain, and subversive a doctrine to be adopted.

There are few enactments under the police power whose indirect reactions are not in some measure in derogation of subsisting laws. The language of the statute should be given its natural and beneficial meaning, when construed with reference to its declared object, and should not be so extended by implication to include within its scope distinctly foreign matters. When so considered there is no actual inconsistency between the statute and the ordinance. If section 242 of the statute does declare that an auctioneer, after paying the license fee and executing the prescribed bond, "may make sales of every description of goods, wares and merchandise of every kind and real estate," the general language used was qualified by the necessarily implicit condition that such sales be not in violation of any subsisting or future statute or ordinance which was in force, or might thereafter be

enacted by the Legislature or passed pursuant to the police and other powers delegated to the municipality. It would be an arbitrary and unwarranted construction to ascribe to this revenue statute the legislative intent to deny to the municipality the power to exercise its delegated police power to the same extent as the State has or could within its municipal limits. Baltimore City Charter (1927), pp. 26, 22. If, therefore, the municipality, from time to time, in the due exercise of its delegated powers, regulates or limits the public auction of certain goods or wares, the ordinance is wholly consistent with the language of the statute. *Holsman v. Thomas,* 112 Ohio St. 397. See *Ballimore v. Bloecher & Schaaf,* 149 Md. 648; *Portsmouth Stove & Range Co. v. Baltimore,* 156 Md. 244; *Rossberg v. State,* 111 Md. 394; *State v. Stewart,* 152 Md. 419, 425, 426.

It follows that the authority of *Mogul v. Gaither,* 142 Md. 381, is not affected by the questions made on this appeal; and that the case must be accepted as decisive of the constitutionality and validity of the present ordinance. *Gaither v. Jackson,* 147 Md. 655, 666, 667; *Ex parte* West (1925) 75 Cal. App. 591, 243 Pac. 55; *Davidson v. Phelps* (1926) 214 Ala. 236; *Clein & Elleman v. Atlanta* (1924) 159 Ga. 121; *Biddles v. Enright,* 239 N. Y. 354; *City of Roanoke v. Fisher,* 137 Va. 75; *State v. Bates,* 101 Minn. 301. Compare *Dornberg v. Spokane,* 125 Wash. 72; *Miller v. Greenville,* 134 S. C. 314; and see annotations 31 *A. L. R.* 299; 39 *A. L. R.* 773; 46 *A. L. R.* 157.

2. With the validity of the ordinance established, the remaining grounds for the demurrer to every one of the ten counts of the indictment will next be examined. The first and second counts are identical, except that the first charges a sale, etc., and the second the causing and permitting a sale, etc., to a named party. The vice of these two counts is that they do not negative the exceptions in the ordinance. Where a statute or ordinance, in defining an offense, contains an exception or proviso which is so incorporated with the language describing and defining the

offense that the elements constituting the offense cannot be accurately and clearly described if the exception is omitted, the indictment must show that the accused is not within the exception. *Kellenbeck v. State,* 10 Md. 431; *Kiefer v. State,* 87 Md. 562; *Barber v. State,* 50 Md. 161; *Mulkern v. State,* 127 Md. 43; *Howes v. State,* 141 Md. 532. The exceptions or provisos in the ordinance at bar are so closely interwoven with the substance of the clause defining the offense as to form a material part of the description of the acts and omissions and elements of the offense created by the ordinance. In fact, the offense denounced is defined by the elimination from a general prohibition of what is specifically permitted. Where such a method is employed, the exceptions or provisos form a material part of the description of the offense, and it must be alleged that the accused does not come within any of the exceptions or provisos.

The third and fourth counts of the indictment charge the offense within the terms of the ordinance and negative all of the exceptions so far as necessary. In connection with other negations, the counts denied that the sale was of the stock on hand of any person or corporation that had, for a period of one year next preceding the date of the offense, been continuously in business in the City of Baltimore as a retail or wholesale merchant of jewelry, but failed to deny that the seller had held a trader's license for such business during that period. This omission was not material, since the denial made was sufficient to show that the auction sale was not of the goods of a merchant whose stock of jewelry could be sold at public auction. The rule requiring an exception to be negatived does not demand a further negative, when the negative made necessarily and conclusively imports a negative of the whole exception. *State v. Price,* 12 G. & J. 260; *Stearns v. State,* 81 Md. 341, 344.

For the reasons stated, the demurrer to the fifth, sixth, seventh and eighth counts was rightly overruled. All that is necessary for the indictment to do, either in charging the offense or in negativing the exceptions, is to follow the

language of the statute. *Supra; Canton Co. v. State,* 126 Md. 352, 355; *Weller v. State,* 150 Md. 278, 281.

The ninth and tenth counts were clearly demurrable. These counts were intended to charge violations of subsection (e) of the ordinance. The requirement of this subsection, that the auctioneer file, at least two days before the proposed auction sale, a certain affidavit, and, within ten days after such sale, a report of a form, content and verification prescribed, all depends upon the auctioneer having been employed to make, and having made, a public auction of the stock in trade of a retail or wholesale merchant of jewelry possessing the necessary pre-requisites demanded by the ordinance. As the provisions of subsection (e) are wholly inoperative unless these conditions exist, the ninth and tenth counts are bad because they fail to charge such facts as would bring the accused within the purview of the ordinance. An auctioneer is under no obligation to make and file the affidavit and report except under certain precedent circumstances, which the counts fail to show existed.

3. There are eight exceptions to the rulings on the evidence. The first exception was unimportant, and there was no reply to the question which is the basis for the eighth exception. The testimony on the second, third, fourth, fifth, and sixth exceptions will not be admissible on the retrial of this case, as the ninth and tenth counts of the indictment are bad. The evidence offered under the seventh exception tended to show that a public auction of jewelry had been carried on continuously at the accused's auction room for more than thirty days, and would have been admissible, if it had been followed up with other proof to show that such continuous sale was a sale of the goods of the same merchant.

As the ordinance is valid, and there are good counts to the indictment, there was no error in the overruling of the demurrer to the indictment, and in sustaining the indictment to the special plea of the traverser which was based on the theory that the ordinance is void. The accused, also, demurred to every count; and, for the reasons here given, there was no error in overruling the demurrer to the third,

fourth, fifth, sixth, seventh and eighth counts, but the demurrer to the first, second, ninth and tenth counts of the indictment should have been sustained.

The verdict was guilty generally, and it is impossible to know if the verdict was based on the good or the bad counts. As the verdict cannot be sustained upon each count, the judgment must be reversed. *Gunther v. Drunbauer,* 86 Md. 1, 9; *Avirett v. State,* 76 Md. 510, 527, 528; *Basta v. State,* 133 Md. 568, 570, 571.

*Judgment reversed, and cause remanded for a new trial.*