COUNTY COUNCIL FOR MONTGOMERY COUNTY, MARYLAND *v.* MONTGOMERY ASSOCIATION, INC. ET AL.

[No. 139, September Term, 1974.]

*Per Curiam Order September 25, 1974.*

*Opinion Filed February 24, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Richard S. McKernon, County Attorney,* with whom were *Alfred H. Carter, Deputy County Attorney, John B. Walsh, Jr.,* and *Suzanne Levin, Assistant County Attorneys,* on the brief, for appellant.

*Amicus Curiae* brief filed by Prince George's County, Maryland, *Joseph S. Casula, County Attorney,* and *Ellis J. Koch, Associate County Attorney,* on the brief.

*James C. Chapin* for appellees.

ELDRIDGE, J., delivered the opinion of the Court. SINGLEY and LEVINE, JJ., dissent and LEVINE, J., filed a dissenting opinion in which SINGLEY, J., concurs at page 65 *infra*.

In July 1974, Montgomery County enacted three ordinances designed to regulate the campaign finance practices of candidates for County Executive and the County Council in that county. The ordinances provided for the reporting of campaign contributions, a ban on corporate contributions, a limit on contributions from individuals and from candidates to their own campaigns, and a limit on campaign spending. The respondents, on August 15, 1974, filed a bill of complaint in the Circuit Court for Montgomery County requesting a declaratory judgment that the three ordinances were invalid and seeking an injunction prohibiting prosecutions under the ordinances. They alleged that the county had not been delegated authority by the General Assembly to enact the ordinances, that the field of regulation of election practices had been completely occupied by the General Assembly in enacting the State Election Code, that the ordinances conflicted with specific provisions of the State Election Code, and that enactment of the ordinances violated the Federal Constitution. On August 29, 1974, the circuit court (McAuliffe, J.) issued a decree declaring the challenged ordinances invalid. The petitioner then took an appeal to the Court of Special Appeals. Because of the importance of the issues involved in the case and the necessity of a decision before the general election in November 1974, we issued a writ of certiorari prior to a decision by the Court of Special Appeals. On September 25, 1974, by a per curiam order, we affirmed the order of the Circuit Court for Montgomery County. We now set forth the reasons for our affirmance.[1]

---

1. The respondent Montgomery Association, Inc., is a nonprofit corporation organized for purposes which include support of or opposition to certain state or local candidates. Respondent Durwood Boeglen is an individual who desired to make a contribution to the Montgomery Association in an amount not allowed by the ordinances. Respondent Cushwa Brick and Building Supply Company wished to make a corporate contribution to the Montgomery Association although one of the ordinances prohibited such contributions. Before the hearing, the parties agreed that

The first of the three ordinances under consideration, County Council Bill No. 19-74, was enacted on July 9, 1974, and became effective when signed by the county executive on July 22, 1974. The bill purported to "supplement Article 33 of the Annotated Code of Maryland, 1973 Supplement . . . ." Specifically, the bill prohibited the knowing solicitation or acceptance of contributions from a corporation organized for profit. It also required county executive and county council candidates to report the names and addresses of persons who contributed more than $25 to their campaigns. The reports were to be filed on or before August 15 and October 15 in the election year at the same place and with the same formality required by Maryland Code (1957, 1971 Repl. Vol., 1974 Cum. Supp.), Art. 33, § 26-11. Council Bill 19-74 also defined a "political committee" in terms similar to those of Art. 33, § 1-1(a)(14) of the Maryland Code. Finally, Bill 19-74 provided that violation of its provisions would be a misdemeanor, subjecting the violator to the possibility of a 6 month prison term and a $1,000 fine.

County Council Bill No. 16-74 was enacted on July 16, 1974, and became effective when signed by the county executive on July 25, 1974. Section 2 of Bill 16-74 contained all of its substantive provisions. Specifically, § 2 limited campaign spending for county executive candidates to $.25 per registered county voter in the primary and to the same amount in the general election. Candidates for county council were limited to an expenditure of $.05 per voter in each election. Political committees not "in sole support" of a particular candidate for county executive or county council were limited to an expenditure of $.075 per voter in each election.

---

the Board of Supervisors of Elections for Montgomery County and Andrew Sonner, the State's Attorney for Montgomery County, who were originally named as defendants, were not necessary parties to the litigation. Therefore, the complaint was voluntarily dismissed as to them. The County Council for Montgomery County, petitioner before this Court, remained as the only defendant at the time of the hearing in the circuit court.

The issue of whether the County Council was the proper defendant in an action against Montgomery County was not raised in this action, and we did not consider it at the time we issued our order.

Section 2 of Bill 16-74 also limited the amount of contributions to a county executive candidate from any one person to $200 in each election. County council candidates were limited to $100 from any one person in each election. A slate which included a county executive or county council candidate could not accept from any one person a contribution of more than $200. Political committees, supporting a county executive or county council candidate, which were not covered by other categories, were limited to $200 contributions from any one person. Duly constituted state central committees organized in conformance with Art. 33 of the Maryland Code were exempted from this provision.

Bill 16-74 also limited personal contributions by a candidate to his or her own campaign to $5,000 for county executive and $2,500 for county council candidates. Finally, Bill 16-74 provided that violation of its provisions constituted a misdemeanor, punishable by a fine of $1,000 or 6 months in jail, by suspension or removal from office, or by any combination of these.

Bill No. 37-74 was enacted on July 16, 1974, and signed on July 30, 1974. It amended the part of the Montgomery County Code which had been enacted one week before as Bill 19-74. Bill 37-74 provided that during the final two weeks preceding an election, a report of any expenditures or obligation for an expenditure in excess of $1,000 by a candidate or political committee supporting his candidacy must be filed within 24 hours of its occurrence at the same place required by Art. 33, § 26-11, of the Maryland Code.

In an oral opinion, Judge McAuliffe held that the County Council had not been delegated the authority under the Express Powers Act to enact the election ordinances here involved.[2] In addition, the circuit court, as an alternative holding, found that the State Election Code, Art. 33 of the

---

2. Art. XI-A, § 2, of the Constitution of Maryland requires the General Assembly to provide a grant of express power for counties which adopt the charter form of government. The General Assembly complied with this requirement by enacting the Express Powers Act, Maryland Code (1957, 1973 Repl. Vol.), Art. 25A.

Maryland Code, preempted the area of campaign finance regulation and thus precluded county legislation in this field. The circuit court also took note of the possible conflict between the local ordinances and state law with respect to corporate contributions and contributions by candidates.

We agree with the circuit court that the General Assembly, by enacting the comprehensive State Election Code, has completely occupied the field of regulation of campaign finances and thus made clear its intent to exclude local legislation on the subject.[3] We therefore find it unnecessary to decide whether the County Council otherwise had the authority to enact the election ordinances, whether there was an actual conflict between the ordinances and the State Election Code, or whether the ordinances violate the Fourteenth Amendment to the United States Constitution.

Petitioner urges that the ordinances here involved are valid because a charter county, if authorized by Art. 25A, has concurrent power to enact local legislation dealing with matters covered by state legislation as long as there is no actual conflict with the state law and the General Assembly does not expressly state its intention to preempt the area. Since Art. 33 contains no provision which in express terms denies to local governments the power to enact ordinances dealing with election finances, petitioner argues that the Montgomery County Council had authority to enact the ordinances because there was no actual conflict with an act of the State Legislature.

The concurrent power theory allows local legislation in certain fields where the State Legislature has acted if the local governments otherwise have authority to enact legislation on the subject. The concurrent powers theory was first applied by this Court in *Rossberg v. State,* 111 Md. 394, 74 A. 581 (1909). The appellant in *Rossberg* challenged the

---

3. The scope of our discussion and holding is limited to the several counties and does not include "municipal corporations" under Art. XI-E of the Constitution of Maryland, and all references in this opinion to "local governments" or "local legislation" are not meant to include governments or legislation of Art. XI-E municipalities. The matter of elections in those municipalities is to some extent dealt with in Code (1957, 1973 Repl. Vol.), Art. 23A and Art. 23B, §§ 25-42.

validity of a Baltimore City ordinance under which he had been convicted for selling cocaine. The city ordinance provided heavier penalties than an earlier state statute, as well as including an offense of possession of cocaine not created by the state statute. The appellant in *Rossberg* argued that enactment of the local ordinance which provided for punishment of an offense which was punishable under state law was invalid because it conflicted with the state law. The Court rejected this argument. It held that the city had been given "concurrent power" with the State to punish the use of cocaine. The principle that ordinances which conflict with state statutes are invalid was limited to those ordinances which "assume directly or indirectly to permit acts or occupations which the State statutes prohibit, or to prohibit acts permitted by statute or Constitution . . . ." (111 Md. at 416.)

The extent of the application of the concurrent powers theory was thoroughly examined in *City of Baltimore v. Sitnick & Firey*, 254 Md. 303, 255 A. 2d 376 (1969). Although the petitioner relies heavily on *Sitnick*, an examination of that case demonstrates that it does not support petitioner's contention with respect to the election ordinances here involved. In *Sitnick*, a tavern owner and a hotel owner sought a declaration that a Baltimore City minimum wage ordinance was invalid. They argued that the ordinance conflicted with the State Minimum Wage Act, Code (1964 Repl. Vol., 1968 Supp.), Art. 100, §§ 81-93, and that the State Legislature, by enacting the state statute, had occupied the field of minimum wage regulation and thereby preempted local legislation on the subject. The state law exempted taverns from coverage, while the city ordinance included them. The city law also set a higher minimum wage — $1.40 to the State's $1.30 — at the time of the argument in this Court.

The Court, in a comprehensive opinion by Judge Finan, set forth the limitations on the concurrent power of local governments to supplement state legislation. The Court recognized in *Sitnick* three grounds on which otherwise valid local legislation may be invalidated because of state

legislation concerning the same matter. First, ordinances which conflict with public general laws are invalid. *Sitnick, supra,* 254 Md. at 310-311; Art. XI-A, § 3, of the Constitution of Maryland. Such conflict includes situations where ordinances " 'assume directly or indirectly to permit acts or occupations which the State statutes prohibit, or to prohibit acts permitted by statute or Constitution . . . .' " *Sitnick, supra,* 254 Md. at 313, quoting *Rossberg v. State, supra,* 111 Md. at 416. Second, ordinances which deal with matters which are a part of an entire subject matter on which the Legislature has expressly reserved to itself the right to legislate are invalid. *Sitnick, supra,* 254 Md. at 311, 317. Third, ordinances which deal with an area in which the Legislature has acted with such force that an intent by the State to occupy the entire field must be implied, are invalid. *Id.* at 311, 323. The Court in *Sitnick* formulated this last ground in the following words (*id.* at 323):

> " . . . [W]e wish it understood that there may be times when the legislature may so forcibly express its intent to occupy a specific field of regulation that the acceptance of the doctrine of pre-emption by occupation is compelled . . . ."

In *Sitnick,* the Court decided that the city minimum wage law was within the power delegated to the city and that the concurrent power theory was not made inapplicable by any of the three grounds listed above.[4] In the instant case, we think that the county election ordinances fit squarely within the third ground on which the concurrent powers theory is

---

4. Since *Rossberg,* the concurrent powers theory has been set forth or applied in several cases. *See, e.g.,* Wilson v. Board of Supervisors of Elections of Baltimore City, 273 Md. 296, 328 A. 2d 305, 309 (1974); County Council for Montgomery County v. Investors Funding Corporation, 270 Md. 403, 419-420, 312 A. 2d 225 (1973); Vermont Fed. S. & L. v. Wicomico Co., 263 Md. 178, 183-184, 283 A. 2d 384 (1971); American Nat'l Bldg. & Loan Assn. v. Mayor & City Council, 245 Md. 23, 31-32, 224 A. 2d 883 (1966); Baltimore City v. Stuyvesant Co., 226 Md. 379, 392, 174 A. 2d 153 (1961); Heubeck v. Mayor and City Council, 205 Md. 203, 208-209, 107 A. 2d 99 (1954); Eastern Tar Products Corp. v. State Tax Comm'n, 176 Md. 290, 296-297, 4 A. 2d 462 (1939); Billig v. State, 157 Md. 185, 191-193, 145 A. 492 (1929); Levering v. Park Comm'rs, 134 Md. 48, 52-53, 106 A. 176, 4 A.L.R. 374 (1919).

inapplicable. The General Assembly has so forcibly expressed its intent to occupy the field of regulating election finances that an intent to preclude local legislation in that field must be inferred.[5]

Our conclusion that the matter of election campaign financing was intended to be completely occupied by state law, to the exclusion of any local legislation on the subject, is based on an examination of the constitutional and legislative provisions regulating elections in this state.

The constitutional provisions setting forth the State Legislature's duty of protecting the electoral process in Maryland are Article III, §§ 42 and 49. Art. III, § 42, states:

> "The General Assembly shall pass Laws necessary for the preservation of the purity of Elections."

Art. III, § 49, provides:

> "The General Assembly shall have power to regulate by Law, not inconsistent with this Constitution, all matters which relate to the Judges of election, time, place and manner of holding elections in this State, and of making returns thereof."

These provisions demonstrate that the framers of our Constitution contemplated that the regulation of elections would be the province of the State Legislature. The General Assembly has responded to these constitutional directives by enacting a comprehensive State Election Code which is contained in Article 33 of the Annotated Code of Maryland.

---

5. An important factor distinguishing *Sitnick* from the instant case should be noted. In *Sitnick* the Court viewed the fact that the Legislature had known of the city minimum wage law and had not inserted a provision repealing the ordinance in the State Minimum Wage law as indicating that the General Assembly did not disapprove of the ordinance. (254 Md. at 322.) In the instant case, Art. 33 had been in force long before the election ordinances were passed. In view of the General Assembly's long and exclusive control of election practices in this State, the Legislature's failure to foresee and take action expressly to prevent future local government trespass in this area of exclusive state legislative authority is no support for the validity of the election ordinances.

Article 33 contains detailed provisions covering every aspect of the electoral process in Maryland.[6] Among other things provided for by the Election Code are administrative supervision of election procedures, location of polling places, creation of precinct boundaries, filing of certificates of candidacy, nominations by primary meetings and petitions, filling of vacancies in nominations, issuance of certificates of nomination, party governing bodies, party central committees, party meetings and conventions, selection of delegates to national party conventions, conduct of presidential primary elections, recounts at primary elections, registration of voters and absentee registration, use of paper ballots, use and operation of voting machines, time allowed for voting in machines, arrangement of names on the ballot, party designation on ballots, specimen ballots and instructions for voters, duties of election judges and poll watchers, closing time of polls, tabulation of votes, local and state boards of canvassers, issuance by Governor of commissions of election, resolution of contested elections, presidential electors, dates of election for United States Senators and Representatives, establishment of United States Congressional Districts, regulation of referenda, penalties for false registration and other deceptive election practices, a Code of Fair Election Practices, use of absentee ballots, formation of new political parties, reporting of contributions by persons doing public business, and the establishment in 1978 of a Fair Campaign Financing Fund.

In Article 33, the Legislature has provided for the administrative supervision of elections on both a statewide and a local level. The State Administrative Board of Election Laws, whose members are appointed by the Governor with the advice and consent of the Senate, is the body which supervises election practices throughout the state. Among

---

6. Basic provisions relating to the conduct of elections are also found in the Constitution of Maryland, Art. I; Art. XV, §§ 4, 7, 9; Art. XVII. Other constitutional provisions set forth requirements for the election of specific state officers and for presentation of specific questions to the voters. *See* Constitution of Maryland, Art. II, §§ 1B-4; Art. III, §§ 3-7; Art. IV, § 3; Art. V, §§ 1-2, 7-8; Art. VI, § 1; Art. XIV, § 1, Art. XVI.

the powers and duties of the board are the following (Art. 33, § 1A-1(e)):

"(1) To exercise supervision over the conduct of elections in the State.

"(2) To adopt rules and regulations to assist the [local] boards of supervisors of elections to comply with the requirements of this article in the conduct of registrations, voting and elections in the State and in otherwise fulfilling their duties under this article.

\* \* \*

"(4) To make an annual report to the General Assembly including recommended changes in this article to *assure its uniform administration* and improvement in the procedure for the conduct of registration, voting and elections." (Emphasis supplied.)

For each county and Baltimore City, the State Legislature has created a local board of supervisors of elections to conduct elections. Members of these boards are appointed by the Governor, subject to confirmation by the Senate. Each board "shall have charge of and make provisions for all elections to be held in its county or city, or any part thereof at any time" and "shall have power to make all necessary rules and regulations, not inconsistent with this article, with reference to the registration of voters and the conduct of elections." Art. 33, § 2-9 (a), (b). This pervasive state administrative control of the election process, on both the statewide and local levels, is a compelling indication that the General Assembly did not intend that local governments should enact election laws, but rather intended that the conduct and regulation of elections be strictly a state function.[7] In the instant case, the County Council for

7. Art. 33 specifically regulates local elections in many areas. For example, § 4A-6 sets filing fees for most local offices at $25. Section 9-4 provides for the filling of vacancies in nominations for local offices. Section

Montgomery County recognized the State's control of local elections by requiring that campaign reports required by the ordinances be filed with the Montgomery County Board of Supervisors of Elections, the agency created by the State law and subject to the supervision of the State Administrative Board of Election Laws.

In the specific area of election practices dealt with by the county ordinances, namely the regulation of campaign finance and spending, the General Assembly has enacted extensive legislation. Foremost is subtitle 26 of Art. 33, entitled "Fair Election Practices." Subtitle 26 requires the appointment of treasurers by political candidates and committees, imposes record keeping and reporting duties on the treasurers, limits the amount which can be contributed by candidates and others, prohibits certain practices in the solicitation and use of campaign money, requires the identification of political advertising and the retention of samples of political material.

While we need not, and do not, decide the issue of conflict between the election ordinances here involved and the State Election Code, it is significant that each provision of the county ordinances has a counterpart in the State Election Code. Bill 19-74 prohibits corporate contributions to county executive and county council candidates while § 26-9 (b) of Art. 33 allows such contributions up to a limit of $1,000 per candidate and a total of $2,500 in any election. Bills 19-74 and 37-74 add further contribution and expenditure reporting requirements to those set forth in §§ 26-4, 26-11, 26-12 of Art. 33. Subsections (b) and (c) of Bill 16-74 limit the amount of contributions which a county executive or county council candidate can accept from any single person to a lesser amount than that allowed by Art. 33, § 26-9 (b). Subsection (d) of Bill 16-74 limits the contributions that county executive and county council candidates can

---

11-2 establishes the composition of political party central committees for each county and Baltimore City. Section 29-10 requires each county and municipality "to enact public financial disclosure requirements with respect to any local officials of their respective jurisdictions" and specifically incorporates the power to enact the disclosure ordinances within the Express Powers Act, Art. 25A, §§ 4-6.

contribute to their own campaigns to a smaller amount than they could contribute under Art. 33, § 26-8. Bill 16-74 sets a limit on spending per registered voter for county executive and county council candidates. Section 31-3 of Art. 33, which will become effective on January 1, 1978, also establishes a per registered voter spending limit for those candidates.

If the county election ordinances were upheld, a dual system of regulating election finances would exist in Montgomery County. It is not difficult to imagine the chaos that such dual regulation would cause. As a result of the definition of a "Political Committee" found in Bill 19-74,[8] candidates for state offices would be swept within the coverage of the Montgomery County ordinances if they were part of a committee or slate which supported a county executive or county council candidate. Thus, a committee formed to aid several candidates for state offices and a county executive candidate, for example, would be severely restricted in its activities in Montgomery County. Moreover, such a committee would be subject to dual record keeping and reporting requirements. In view of the completeness of the State's campaign finance regulatory plan, we cannot reasonably conclude that the Legislature intended to allow local legislation in the field of campaign finances which would inevitably lead to utter confusion.

The constitutional and statutory provisions cited above demonstrate that the General Assembly is obligated to enact and has enacted a comprehensive plan for the conduct of elections in Maryland. In particular, the Legislature has enacted detailed provisions governing the financing of election campaigns in this state. This legislation reveals the purpose of the General Assembly to occupy the field of election finances. It is difficult to imagine an area where the Legislature has more "forcibly express[ed] its intent to occupy a specific field of regulation" than in this area.

---

8. The definition of a "Political Committee" in Bill 19-74 includes "any combination of two or more persons appointed by a candidate or candidates or any other person, or formed in any other manner, whose primary purpose is to assist or attempt to assist in any manner the promotion of the success or defeat of any candidate, political party or election . . . ."

*Sitnick, supra,* 254 Md. at 323. We therefore hold that the Montgomery County ordinances challenged in this case are invalid because the General Assembly has pre-empted the field of election financing practices.

Our holding is in no way inconsistent with the concurrent powers theory set forth in the *Rossberg* and *Sitnick* cases. In *Rossberg,* additional criminal penalties were provided for a crime that was particularly troublesome in Baltimore City. In *Sitnick,* a stricter minimum wage law was passed to reflect the higher cost of living in Baltimore City. The control of certain types of criminal conduct and the regulation of working conditions are both areas in which some local control has traditionally been allowed. The regulation of campaign financing is not such an area of traditional concurrent local control. The interrelationship of state and local candidates, tickets, and parties would make such local control very difficult to achieve without interfering with the electoral process established under state law. This case falls within the principle set forth by the Court in *Sitnick,* that the Legislature may so forcibly express its intent to occupy a specific field of regulation that the acceptance of the doctrine of preemption by occupation is compelled.

*Levine, J., dissenting:*

I respectfully dissent. I disagree with the majority holding that the General Assembly has preempted the field of campaign finance regulation to the exclusion of otherwise-valid legislation by chartered counties.

The holding of the majority has the effect of overruling sub silentio a long line of cases decided by this Court, by virtually abrogating the doctrine of concurrent powers first enunciated in *Rossberg v. State,* 111 Md. 394, 74 A. 581 (1909), and consistently reaffirmed by its progeny. The General Assembly has occupied the field of election law legislation with no greater force than it did in the area of minimum wage legislation, which we dealt with in *City of*

*Baltimore v. Sitnick & Firey*, 254 Md. 303, 255 A. 2d 376 (1969).

Since I am also of the view that the ordinances were enacted upon properly delegated authority, and are neither in conflict with state law nor in violation of the Federal and State Constitutions, I would reverse the circuit court decree. Judge Singley authorizes me to state that he concurs in this opinion.