527 A.2d 796

**EAST COAST WELDING AND CONSTRUCTION CO., INC.**

**v.**

**REFRIGERATION, HEATING & AIR CONDITIONING BOARD, et al.**

No. 1445, Sept. Term, 1986.

Court of Special Appeals of Maryland.

July 9, 1987.

Certiorari Denied Dec. 9, 1987.

Herbert A. Thaler, Jr., Baltimore (Howard L. Stern, Camp Springs, on the brief), for appellant.

John T. Beamer, II, Associate County Atty., Upper Marlboro (Larnzell Martin, Jr., County Atty. and Michael O. Connaughton, Deputy County Atty., Upper Marlboro, on the brief), for appellees.

Argued Before BISHOP and POLLITT, JJ., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

POLLITT, Judge.

Among the Public General Laws of the State of Maryland is the Boiler and Pressure Vessel Safety Act, Maryland Code (1957, 1982 Repl.Vol.), Art. 48, §§ 167–180A. Among the provisions of the Prince George's County Code (1983) is § 2A–103, titled "Licensing," which requires, among other things, the licensing of persons wishing to install, repair or maintain heating systems in the County. The paramount questions in this case are whether the two statutes are in conflict and whether the General Assembly has preempted the right of Prince George's County to legislate on the subject.

For a number of years, East Coast Welding and Construction Co., Inc. (East Coast) has been engaged in the repair and maintenance of boilers and pressure vessels throughout the State of Maryland. It has been awarded and has satisfactorily performed several boiler repair contracts let by the Prince George's County Board of Education. It has possessed, at all relevant times, a valid certificate of authorization for the use of the "R" symbol stamp issued by the National Board of Boiler and Pressure Vessel Inspectors.

East Coast's present problems began on 23 September 1983, when it was notified that its bid to provide boiler repair work for the Board of Education was rejected as nonresponsive because none of its employees possessed a license to perform such work as required by the County Code. Since that date, all of East Coast's bids in Prince George's County have been rejected for the same reason. In an effort to rectify the problem, on 10 October 1983, Robert Hayes, president of East Coast, sat for the written heating licensing board test administered by the Refrigeration, Heating and Air Conditioning Board of Prince George's County (Board). He failed the test and failed to appear for a scheduled reexamination on 7 January 1984. After the Board denied his request that the examination requirement be waived, East Coast instituted these proceedings, seeking to have the law and the test declared invalid. During the course of the litigation, the Board attempted to

resolve the conflict by giving Hayes an oral examination consisting of nine questions dealing solely with the installation and maintenance of boilers. Despite his being given advanced possession of the written test and the answers thereto, Hayes again failed.

After various amendments to the pleadings and completion of discovery, both sides moved for summary judgment. The Circuit Court for Prince George's County (Perry, J.) granted the motions of the County and the Board. East Coast appeals and presents the following questions:

I. Whether Section 2A–103 of the Prince George's County Code requiring a license for the repair of boilers and pressure vessels is invalid because such local legislation is in conflict with Public General Laws concerning the same matter.

II. Whether Section 2A–103 of the Prince George's County Code requiring a license for the repair of boilers and pressure vessels is invalid because the legislature has acted with regard to the regulation of the repairs of boilers and pressure vessels throughout the State of Maryland so as to solely occupy regulation of the field?

III. Whether the examination administered by the Refrigeration, Heating and Air Conditioning Board of Prince George's County is invalid?

## I and II

The Boiler and Pressure Vessel Safety Act was enacted substantially in its present form by Chapter 732, Laws of 1973.[1] Section 167 states the policy and intent of the Act.

---

**1.** The subject was first addressed by the General Assembly in Chapter 676, Laws of 1920, adopting a sub-title "Boiler Rules" as a part of Maryland Code (1924) Art. 48, titled "Inspections." Through various amendments the sub-title has been known as "Boiler Rules" and "Boiler Safety Act." Code (1924) Art. 48, §§ 131–138; Code (1939) Art. 48, §§ 151–164; Code (1951) Art. 48, §§ 154–177; Code (1957) Art. 48, §§ 167–180.

The General Assembly of the State of Maryland finds that there have been numerous recent incidents of peril to the safety of life, limb and property due to improper and/or inadequate construction, installation, maintenance, use, repair or inspection of boilers and pressure vessels operating in this State. It is the policy of this subtitle and the intent of the General Assembly to establish boiler and pressure vessel safety standards in the State of Maryland to provide a level consistent with the needs of the population for their safety of life, limb and property.

Section 169 provides for the creation of the Board of Boiler Rules within the Division of Labor and Industry. The Board of Boiler Rules is empowered under Section 170 to "formulate definitions, rules and regulations for the safe construction, use, installation, maintenance, repair and inspection of boilers and pressure vessels in this State." Section 170 further provides that the "[r]ules and regulations formulated by the Board may be adopted and promulgated by the Commission of Labor and Industry subject to the approval of the Secretary of Licensing and Regulation...."

Sections 171 and 172 define the types of boilers and pressure vessels which are covered by the Act and list numerous exceptions. The remaining sections of the Act deal specifically with the inspection of boilers and pressure vessels.

Since 1975, the Prince George's County Code has contained Section 2A–103, which provides in pertinent part for the licensing of persons who wish to "install, maintain, repair, or replace refrigeration, air conditioning and heating equipment, and mechanical ventilation equipment incidental thereto." In order to obtain a license, an applicant must pass an examination given by the Refrigeration, Heating and Air Conditioning Board of Prince George's County "on the practical and theoretical aspects of installing, maintaining, repairing, and replacing" said equipment. Both sides agree that this statute encompasses boilers and pressure

vessels as defined in the Boiler and Pressure Vessel Safety Act.

Appellant concedes "that Prince George's County, as a chartered county, has the authority to regulate certain activities, including the repair of air conditioning and heating apparatus, pursuant to the police powers granted a political subdivision pursuant to Md. Const. art. XI–A (the Home Rule Amendment)."

It contends, however, that the County Code conflicts with or is preempted by the Boiler and Pressure Vessel Safety Act.

The Court of Appeals has said:

Several decisions of this Court have examined alleged conflicts between local and state laws, recognizing that one of the purposes of "home rule" was to allow local areas some independence in deciding questions of local concern, *see City of Baltimore v. Sitnick & Firey,* 254 Md. 303, 255 A.2d 376 (1969); *State v. Stewart,* 152 Md. 419, 137 A. 39 (1927). This Court has adhered to the rule of construction that when municipal ordinances are "enacted in pursuance of competent authority, they should be upheld by every reasonable intendment, and reasonable doubts as to the validity of an ordinance should be resolved in its favor." *Tar Products Corp. v. Tax Commn.,* 176 Md. 290, 297, 4 A.2d 462 (1939). The established principle of law in this state is that:

[O]rdinances which assume directly or indirectly to permit acts or occupations which the State statutes prohibit, or to prohibit acts permitted by statute or Constitution, are under the familiar rule for validity of ordinances uniformly declared to be null and void. Additional regulation by the ordinance does not render it void. [*Rossberg v. State,* 111 Md. 394, 74 A. 581 (1909).]

We have, accordingly, ruled that "a conflict exists only when a local law prohibits something permitted by the legislature, or permits something prohibited by the legis-

lature." *Murray v. Director of Planning*, 217 Md. 381, 389, 143 A.2d 85 (1958). *Accord, County Council v. Montgomery Ass'n*, 274 Md. 52, 57–58, 333 A.2d 596 (1975); *City of Baltimore v. Sitnick & Firey, supra,* 254 Md. at 311–14 [255 A.2d 376]; *Reed v. Pres. of North East*, 226 Md. 229, 172 A.2d 536 (1961); *Tar Products Corp. v. Tax Commn., supra,* 176 Md. at 296 [4 A.2d 462]. *See also* other cases cited in *City of Baltimore v. Sitnick & Firey, supra,* 254 Md. at 314 [255 A.2d 376]. In other circumstances, the state may permit municipalities to exercise concurrent regulatory authority.

*Annapolis v. Annap. Waterfront Co.,* 284 Md. 383, 391, 396 A.2d 1080, 1085 (1979).

And, in *County Council v. Montgomery Ass'n,* 274 Md. 52, 58–59, 333 A.2d 596, 599–600 (1975), citing *City of Baltimore v. Sitnick & Firey, supra,* the Court said:

The Court, in a comprehensive opinion by Judge Finan, set forth the limitations on the concurrent power of local governments to supplement state legislation. The Court recognized in *Sitnick* three grounds on which otherwise valid local legislation may be invalidated because of state legislation concerning the same matter. First, ordinances which conflict with public general laws are invalid. *Sitnick, supra,* 254 Md. at 310–311 [255 A.2d 376]; Art. XI–A, § 3, of the Constitution of Maryland. Such conflict includes situations where ordinances " 'assume directly or indirectly to permit acts or occupations which the State statutes prohibit, or to prohibit acts permitted by statute or Constitution....' " *Sitnick, supra,* 254 Md. at 313 [255 A.2d 376]; quoting *Rossberg v. State, supra,* 111 Md. at 416 [74 A. 581]. Second, ordinances which deal with matters which are a part of an entire subject matter on which the Legislature has expressly reserved to itself the right to legislate are invalid. *Sitnick, supra,* 254 Md. at 311, 317 [255 A.2d 376]. Third, ordinances which deal with an area in which the Legislature has acted with such force that an intent by the State to occupy the entire field must be implied, are invalid. *Id.* at 311, 323 [255 A.2d

376]. The Court in *Sitnick* formulated this last ground in the following words (*id.* at 323 [255 A.2d 376]):

" . . . [W]e wish it understood that there may be times when the legislature may so forcibly express its intent to occupy a specific field of regulation that the acceptance of the doctrine of pre-emption by occupation is compelled. . . ."

■ Applying these precepts to the instant case, we believe the county law neither conflicts nor is inharmonious with the State Act. In *Sitnick, supra,* the Court approved of a city ordinance that set minimum wage standards higher than those set by the State. The Court stated:

"The mere fact that the State, in the exercise of the police power, has made certain regulations does not prohibit a municipality [or county] from exacting additional requirements. So long as there is no conflict between the two and the requirements of the municipal by law are not in themselves pernicious, as being unreasonable or discriminatory, both will stand. . . ."

254 Md. at 316–17, 255 A.2d at 382 *quoting* 37 Am.Jur. *Municipal Corporations* § 165.

Appellant argues that any county statute that precludes organizations with an "R" stamp from making repairs is obviously in conflict with the State statute because the Act permits organizations that display an "R" stamp to perform boiler and pressure vessel repairs. We disagree.

The Act provides no guidance in the area of maintenance and repair of boilers and pressure vessels other than delegating the power to formulate rules regarding their maintenance and repair to the Board of Boiler Rules and further providing that such rules *may* be adopted and promulgated by the Commissioner of Labor and Industry.

Upon our review of the many rules so adopted, we find only one having any application to repairs and maintenance of boilers.

COMAR 09.12.01.02CC provides:

CC. Repairs by Fusion Welding. When repairs are to be made by fusion welding, the owner or user shall obtain permission from the Chief Boiler Inspector, Deputy Boiler Inspector, or Special Inspector, and the repairs shall be done in accordance with the National Board Inspection Code, Chapter III, "Repairs and Alterations to Boilers and Pressure Vessels By Welding." Repairs to boilers and pressure vessels shall be made by a repair organization having one of the following authorizations:

(1) By an organization in possession of a valid certificate of authorization for the use of the "R" symbol stamp, issued by the National Board of Boiler and Pressure Vessel Inspectors;

(2) An organization in possession of a valid ASME Certificate of Authorization, provided the repairs are within the scope of the organization's quality control system;

(3) An organization not holding either the "R" stamp or appropriate ASME stamp shall secure approval from the Chief Boiler Inspector, Deputy Boiler Inspector, or Special Inspector to make specific repairs pursuant to the following procedures:

(a) The repair firm shall notify the Chief Boiler Inspector, Deputy Boiler Inspector, or Special Inspector before the start of the specific repair work, of the location of the repair work, for whom the work will be performed, and a description of the repairs to be made;

(b) The Chief Boiler Inspector, Deputy Boiler Inspector, or Special Inspector upon the information furnished may grant temporary approval to proceed with the repairs pending inspection and satisfactory performance as to the following:

(i) Welding documentation,

(ii) Mill certification of plate and pipe as required in the ASME material specification,

(iii) Type and diameter of filler metal used,

(iv) Copy of repair firm's quality control manual or description of how quality control is maintained,

(v) Compliance with National Board Inspection Code;

(c) When repairs have been properly completed, the repair firm shall notify the Chief Boiler Inspector, Deputy Boiler Inspector, or Special Inspector for final acceptance.

Appellant interprets this rule as enabling all organizations with an "R" symbol stamp to repair boilers and pressure vessels. We note, preliminarily, that the rule applies only to "repairs by fusion welding," while the County Code applies to repairs of all types. We interpret this rule as being simply a minimum standard governing certain types of repairs. A county would be prohibited under this rule from permitting an organization without an "R" symbol stamp to make repairs by fusion welding. This rule, however, does not prohibit a county from enforcing stricter guidelines for boiler and pressure vessel repairmen. The rule provides that all organizations must have an "R" symbol stamp, but it does not say that all organizations with an "R" symbol stamp must be permitted to make repairs. In Prince George's County, it follows that, not only must the organization have an "R" symbol stamp, but it also must have an employee with a license which can only be obtained by passing an examination. These stricter guidelines are harmonious with the policy and intent of the Act which is to establish higher safety standards in the maintenance of boiler and pressure vessels.

■■ Appellant next argues that the Legislature has acted within the area of boiler and pressure vessel repair so as solely to occupy regulation of the field. We disagree.

The Act primarily deals with the inspection of boilers and pressure vessels. The Legislature delegated the authority to provide rules and regulations for maintenance and repair to the Board of Boiler Rules. In the rules thus far promulgated by the Division of Labor and Industry, only one small section deals with the maintenance and repair of boilers and pressure vessels. The majority of the rules, like the Act,

deal with the inspection of boilers and pressure vessels and the methods of removing those that have been condemned.

The facts of this case are more analogous to *National Asphalt v. Prince Geo's Co.*, 292 Md. 75, 437 A.2d 651 (1981), and *City of Baltimore v. Sitnick & Firey, supra,* which have been distinguished from cases upholding the implied preemption theory. In *National Asphalt, supra,* the Court said:

On three occasions recently, this Court has held that county laws were impliedly preempted by the extensive state legislation in the fields involved. *County Council v. Montgomery Ass'n, supra,* held that the General Assembly had preempted the matter of regulating elections to the exclusion of county legislation. In *McCarthy v. Bd. of Education of A.A. Co.*, 280 Md. 634, 374 A.2d 1135 (1977), we held that state legislation had so occupied the field of primary and secondary school education that county laws were precluded. And in *Mont. Co. Bd. of Realtors v. Mont. Co.*, 287 Md. 101, 110, 411 A.2d 97 (1980), the Court held that the assessment and method of taxing real estate was impliedly preempted by state law. National Asphalt relies upon these three cases in contending that the area of employment discrimination has been preempted by occupation. In our view, this reliance is misplaced.

In all three of the above-mentioned cases, the areas held to be preempted were comprehensively dealt with by state law. The state legislation was extensive and embraced virtually the entire area involved. For example, as pointed out in *County Council v. Montgomery Ass'n, supra,* 274 Md. at 61, the state election code "contains detailed provisions covering every aspect of the electoral process in Maryland." The state laws relating to elections, education and real property assessment and taxation provided for pervasive administrative regulation, including regulation at the county level. Moreover, in each of these fields, the state laws preceded county efforts to legislate.

The state legislation relating to employment discrimination, however, is entirely different. Unlike the extensive and comprehensive provisions of the election, education or taxation articles of the Maryland Code, the matter of employment discrimination is dealt with by five relatively brief sections in Article 49B which do not comprehensively cover the entire field. As previously noted, only industries or businesses employing fifteen or more persons are covered by the state law. Art. 49B, § 15(b). Employers with less than fifteen employees are not permitted by the state statute to discriminate in their employment practices; they simply are not covered. Similarly, certain categories of employees are not covered by the state statute. Art. 49B, § 15(e).

*National Asphalt,* 292 Md. at 78–79, 437 A.2d at 652–53. We, likewise, find the provisions of the Act in question to be neither extensive nor comprehensive in the field of boiler repairs, so as to constitute an implied preemption.

Maryland Code (1957, 1983 Repl.Vol., 1986 Cum.Supp.), Art. 56, § 12, prevents counties or other local governments from requiring licenses for organizations to transact business when the State has already required a license in the field except when the local license is in the interest of the public's health, safety or morals. Art. 56, § 12 provides:

Except as otherwise expressly provided in this article, no county, city or other political subdivision of this State shall require any person, firm or corporation to obtain a permit or license to transact in such county, city or other political subdivision, any business or occupation for which it or he is required to obtain a State license under the provisions of this article, nor shall any county, city or other political subdivision of this State levy any occupational tax or fee upon such person, firm or corporation for transacting any such business or engaging in any such occupation for which such State license is required. Notwithstanding the provisions of this section, any county, city or other political subdivision of this State may require permits or licenses to be obtained where necessary

for regulatory purposes in the interest of the public health, safety or morals. The provisions of this section shall not be deemed to be repealed by any local act hereafter passed unless expressly referred to and expressly repealed in terms. Provided, however, that the provisions of this section shall not apply to Prince George's County, Baltimore City or Worcester County.

While this statute is not directly applicable to the case before us, there being no specific provisions in the licensing statute regarding heating system repairmen, we think an analogy can be instructive. First, since Prince George's County has been specifically exempted from this statute, it is not prohibited from requiring a license in a field unless the Legislature has preempted local licenses or the local license is in conflict with the State license. Second, even if Prince George's County were not exempted from the statute, the additional safeguards that the county has imposed for supervision of heating system repairs would fall squarely within the exception that permits local licenses in the interest of public health, safety or morals.

### III

Finally, appellant says the test administered by the Board is invalid. This argument is based solely on an opinion expressed by the Chief Boiler Inspector of the State that a large part of the first test given Mr. Hayes was not relevant to the maintenance and repair of boilers and pressure vessels. Keeping in mind the fact that the County is licensing the installation and repair of heating equipment of all types, not only boilers and pressure vessels, we fail to see how the Inspector's opinion was relevant. Assuming that it was sufficient to give rise to a factual dispute as to the validity of the first test, it did not address the oral examination given, which was not disputed to have consisted of nine questions related solely to boilers. We perceive no dispute of material facts on this issue.

JUDGMENT AFFIRMED; APPELLANT TO PAY COSTS.