Western Smelting and Refining Company and Bekins Van and Storage Company, Appellants, v. Benj. Harris and Company and Mitchell-Jackson, Inc., Appellees.

Gen. No. 40,663.

536

Opinion filed December 13, 1939. Rehearing denied December 27, 1939.

LEDERER, LIVINGSTON, KAHN, ADLER & ADSIT, of Chicago, for appellants; CHARLES LEDERER and SIGMUND LIVINGSTON, of counsel.

A. J. SCHANFARBER, SIDNEY J. and ARTHUR WOLF and J. ROBERT COHLER, all of Chicago, for appellee Benj. Harris & Co.

MR. JUSTICE BURKE delivered the opinion of the court.

On January 8, 1937, Benj. Harris & Company instituted an attachment suit in the municipal court of Chicago, naming the Western Smelting & Refining Company as defendant, and Mitchell-Jackson, Inc., as

garnishee. The affidavit in attachment averred that the defendant was a nonresident, and that its place of business was at Omaha, Nebraska. The amount claimed was $1,500. Plaintiff's place of business was at Chicago Heights, Illinois. Plaintiff claimed that the defendant had breached the agreement to sell to it a carload of mixed brass, located at the Mitchell-Jackson, Inc., warehouse at Chicago. The $1,500 was the amount of damages which plaintiff claimed it suffered because of the breach of contract. An attachment bond in the sum of $3,000 was approved and the attachment writ issued. Publication was duly made as to the defendant which was a nonresident. Defendant did not appear or answer, and an order of default was entered against it. The garnishee, Mitchell-Jackson, Inc., answered, in substance, admitting that it had the carload of brass and denying that the same belonged to the defendant. On February 10, 1937, Melvin Bekins of Omaha, Nebraska, an individual who operated under the name of Bekins Van & Storage Company, filed an intervening petition, averring that he had delivered to Mitchell-Jackson, Inc., of Chicago, the carload of brass, and received a warehouse receipt therefor, that he was in possession of the warehouse receipt and that he owned the merchandise. He asked that the attachment writ be quashed. On April 7, 1937, plaintiff was given leave to amend the affidavit of attachment by increasing the amount claimed from $1,500 to $4,000, which amendment was made upon the face of the affidavit by drawing a line through the numerals "$1,500.00" and writing above the sum of "$4,000.00." No notice of the amendment was given to the defendant in attachment, nor was there any service by publication of said amendment. The court. entered a rule that the defendant answer within five days. The rule was not served upon the defendant. The court entered upon a hearing of the cause on April 12, 1937. On April 13, 1937, the principal defendant was again defaulted.

The court heard the case without a jury and between the intervenor and plaintiff, found the issues in favor of plaintiff. On April 13, 1937 the court entered judgment against the principal defendant in the sum of $3,750. It further entered judgment against one carload of mixed brass in the possession of the garnishee and found that the brass was the property of the principal defendant; directed that the garnishee deliver the carload of brass to the bailiff of the court on special execution; that the bailiff, out of the proceeds of the sale, pay the garnishee its storage charges of $465.60, the plaintiff the sum of $3,750 and costs and interest thereon, and that the balance, if any, be paid to the principal defendant. At the time of inserting the amendment increasing the amount of the claim from $1,500 to $4,000, no additional attachment bond was furnished. Thirteen days after the rendition of the judgment, namely, on April 26, 1937, plaintiff presented for approval a new bond in the sum of $8,000. The same was approved over the objection of the attorney for the intervenor. The intervenor appealed to this court, which, in an opinion in *Benj. Harris & Co. v. Western Smelting & Refining Co.*, 294 Ill. App. 610 (Abst.), affirmed the judgment of the trial court. The intervenor petitioned the Supreme Court for leave to appeal from the judgment of the Appellate Court. The petition was denied. We have examined the record of the trial in the case which was previously appealed. The intervenor, Melvin Bekins, proprietor of the Bekins Van & Storage Company, in that trial maintained that he was the owner of the brass, that he had sold the brass to the principal defendant, Western Smelting Company, but had not been paid therefor and had not delivered the warehouse receipt to the purchaser because such purchase price was not paid. During the trial and while Mr. Bekins was on the witness stand, counsel for plaintiff tendered to him the sum of $5,626.40, claiming that to be the purchase price of the

brass, less the accumulated storage charges. The tender was refused. At the conclusion of the trial, the court found that the brass was the property of the principal defendant and denied the claim of the intervenor. On July 19, 1938, more than a year after the entry of the judgment, the Western Smelting & Refining Company and Bekins filed a petition in the municipal court under section 21 of the act governing that court. The petition set up the facts as herein related. The principal defendant contended the court did not have jurisdiction to enter judgment against it. In the alternative, the intervenor asked that the special execution in attachment be stayed until the amount tendered to him on the trial of $5,626.40 was paid to him, or brought into court, or that the court order the proceeds of the sale to be brought into court. The plaintiff moved to strike the petition, which motion was overruled. It then moved to set aside the order denying the motion to strike, which motion was also overruled. Plaintiff then answered and substantially admitted the facts set out in the petition. It also asserted that the principal defendant contributed to the expense of defending the attachment suit. On the trial of the petition under section 21, no evidence was introduced to sustain the averment of the answer that the principal defendant contributed to the expense of defending the attachment suit. The answer also set out that the principal defendant was notified of the original appeal by Bekins. There is no dispute that a copy of the notice of appeal in that case was mailed to and received by the defendant. The defendant did not appear in the Appellate Court. The principal defendant contends that the judgment in attachment against its property is void.

Section 22 of the Attachment Act (sec. 22, ch. 11, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 109.056]) provides for constructive notice by publication and mail in attachment suits, and that such notice shall state "for what sum" the attachment is made. The

purpose of the provision is to inform the defendant that his property within the jurisdiction of the court is being seized for the purpose of paying not more than the amount appearing in the notice. Rule 126 of the Municipal Court of Chicago provides that:

"In case any defendant shall not have entered his appearance at the time an order for amendment of plaintiff's statement of claim is granted, plaintiff shall cause to be served upon the defendant a copy of such amendment with a notice of the granting of such order." Two notes follow Rule 126. Note 1 reads:

"As every summons has attached thereto a copy of the praecipe and statement of claim, the defendant, when served, is entitled to assume the claim thus stated is the only one he is called upon to meet. Therefore, he may be willing to be defaulted as to that claim, whereas he might not be willing to submit to a default as to the claim as amended. As the summons has attached thereto a copy of the statement of claim the order amending it, when served upon the defendant, should likewise have a copy of the amendment attached to it, the same rule should apply in case of the amendment of the counterclaim." Note 2 reads:

"By Rule 299 notice given of an amendment of a pleading to a party who has not entered his appearance must be served personally in the same way as a summons, or if the party is one authorized to be notified by publication, there must be a publication of notice." Section 20 of the Municipal Court Act gives that court power to adopt rules as to practice. In the instant case, the validity of these rules is not assailed. At the time of the entry of the order granting leave to amend, the court also entered a rule upon defendant to answer the amended affidavit and claim within five days. It cannot be doubted that the court intended that the defendant should have an opportunity to answer. Manifestly, the defendant could not answer unless it had notice of the rule. No notice was given by

publication or otherwise. The effect of the amending order was to set aside the previous default. Under the authorities of this State an amendment materially increasing the *ad damnum,* is an amendment of substance. As indicating the trend of thought, it is interesting to observe that section 34 of the Civil Practice Act (sec. 158, ch. 110, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 104.034]) provides that except in case of default, the prayer for relief shall not be deemed to limit the relief obtainable. A person receiving a notice in attachment that a claim for a certain sum of money will be asserted, might be willing that judgment be entered for an amount not exceeding such sum. However, if judgment could be entered for a greater sum without giving notice of the claim for the increased amount, such practice would be manifestly unfair. The fact that the Attachment Act requires that the notice set out the amount of the demand, shows that the legislature regarded that item as important. The court, and presumably plaintiff, also looked upon notice of the increased demand as essential, as otherwise the entry of the rule requiring the defendant to answer the amendment within five days would be an idle gesture. On the plainest principles of justice, we conclude that the court was without jurisdiction to enter the judgment against the principal defendant.

A second point urged by the principal defendant is the failure of plaintiff to file an attachment bond upon amending the affidavit of attachment. Section 4a of the Attachment Act (sec. 4a, ch. 11, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 109.036]) provides that before granting an attachment, the clerk shall take bond and sufficient surety in double the sum sworn to be due, and that "every attachment issued without a bond and affidavit taken, is hereby declared illegal and void and shall be dismissed." The judgment entered was for $3,750. At that time the penalty on the bond was

$3,000. The minimum amount of the bond under the statute should have been $7,500. Thirteen days after the judgment had been entered, a new bond was submitted and approved in the sum of $8,000. The defendant contends that in fact, the new bond was presented after he had served notice to appeal. That is denied by plaintiff. The order approving the new bond recited that:

"This matter coming on to be heard on motion of the attorneys for the plaintiff in the above entitled cause for leave to file an attachment bond in the sum of $8,000 in lieu of the attachment bond heretofore filed, and it appearing to the Court that Bekins Van & Storage Company, intervening petitioner, has objected to the sufficiency of the attachment bond, and it further appearing to the Court that at the time that said motion was made the attorneys for the plaintiff stated in open Court that a new attachment bond would be filed in double the amount of plaintiff's claim, and it further appearing to the Court that at the time that the plaintiff increased the amount of its damages, the plaintiff stated in open Court that it was willing to file a new attachment bond in any amount set by the Court. . . ."

In a factual situation similar to the one in the case at bar, the Supreme Court of Maryland, in *Lanasa v. Beggs,* 159 Md. 311, said (p. 316): "The exaction of this bond is not only a protection to the alleged debtor but also a deterrent to false, unfounded, or speculative claims; and, whether the attachment issued be dissolved or not, this bond continues effective until the proceedings set in operation by the attachment are at an end. Hence the statute contemplates that the ratio of two to one between the penalty of the bond and the full amount of the claim of the attaching creditor *ex delicto* or *ex contractu* remain constant throughout the entire litigation. If this were not true, an attaching claimant in an action *ex delicto* or *ex contractu* could deprive the alleged debtor of the protection accorded

by the statute by making his original claim less than ultimately intended, and then, after furnishing a bond in the inadequate penalty fixed by the reduced claim, enlarge it by amendment to meet his utmost expectation. A court could not permit such an obvious manoeuvre to defeat the express and definite statutory prerequisite to its writ.'' At the time the judgment was entered, there was no attachment bond, as required by the statute. Section 4a, part of which we have quoted, provides that every attachment issued without a bond and affidavit is declared illegal and void. If an attachment creditor were permitted to wait until after he had procured a judgment upon a default before entering into a bond in double the amount of his increased demand, there would be grave danger of fraud. If he secured a judgment for the increased amount, he would be safe in giving a bond as required by the statute. If, on the contrary, the judgment was against him, he would not have a bond on file, and the parties harmed would not have the protection which the statute intended to afford them. We are also of the opinion that section 28 of the Attachment Act (sec. 28, ch. 11, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 109.062]) providing that no writ of attachment shall be quashed nor the property taken thereon restored, nor any bond given canceled, on account of any insufficiency of the attachment bond, if the plaintiff shall cause a legal and sufficient attachment bond to be filed in such time as the court shall direct, did not permit the plaintiff to remedy the vital omission in the instant case. The intent of that section is to cure clerical and other deficiencies in the bond where there has been a bona fide attempt to comply with the statute. In the instant case, the judgment was entered in clear violation of the provision requiring a bond in double the amount of the claim. On this point also we agree that the court was without jurisdiction to enter judgment against the principal defendant.

So far as the principal defendant is concerned, the judgment was void because the court was without jurisdiction. The attaching plaintiff did not comply with the statute nor with the rule of the municipal court, which has the same force as a statute. The judgment being void for the reasons stated, the defendant had a clear right to petition the court to have the judgment vacated or expunged.

Plaintiff calls our attention to Rule No. 210 of the municipal court. Such rule does not apply to a situation such as is presented in the instant case. Here no attempt was made to serve the defendant by publication or otherwise after the amendment had been made. Therefore, we do not consider that Rule No. 210 is applicable.

A further point urged by plaintiff is that in the former appeal this court determined that the judgment was valid. The appeal was solely by the intervenor. We are of the opinion that the affirmance of the judgment in that appeal did not operate to prevent the principal defendant from questioning the jurisdiction of the court to enter the judgment.

Our remarks concerning the judgment, insofar as it affects the principal defendant, disposes of the case. Melvin Bekins, proprietor of the Bekins Van & Storage Company, has also appealed. In the alternative he contends that by tendering the sum of $5,626.40, plaintiff thereby admitted that it was indebted to him in at least that sum of money. He states that, whether accepted or not, the tender of the unpaid purchase price had the effect of removing the lien that the intervenor had, and that thereby the title of the goods vested in the purchaser, Western Smelting & Refining Company. We have carefully examined the authorities and agree with the contention of the intervenor. We also agree that the trial court had the right, under the authority of *Galena & Southern Wisconsin R. Co. v. Ennor*, 116 Ill.

55, to set aside the judgment or to compel payment of the tender by staying execution until the tender is paid. We are also of the opinion that the court had the right to entertain the petition of the principal defendant and intervenor under section 21 of the Municipal Court Act. The intervenor is bound by the judgment. There was a trial and judgment against the intervenor. On appeal the judgment was affirmed. In the instant proceeding the intervenor does not question the judgment or the jurisdiction of the court.

For the reasons stated, the order of the municipal court of Chicago denying the prayer of the petition is reversed, and the cause remanded with directions to enter an order allowing the prayer of the petition.

*Reversed and remanded with directions.*

Denis E. Sullivan, P. J., and Hebel, J., concur.