FOURTH DIVISION
MAY 1, 2008

Nos. 1-07-0089 & 1-07-0606 (Consolidated)

| | | |
|---|---|---|
| ABN AMRO SERVICES COMPANY, INC., | ) | Appeal from the Circuit Court |
| LaSALLE BANK CORPORATION, and | ) | of Cook County |
| LaSALLE BANK NATIONAL, | ) | |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | No. 06 CH 18710 |
| | ) | |
| NAVARRETE INDUSTRIES, INC., d/b/a INS | ) | |
| INTEGRATED SECURITY SOLUTIONS, INC., | ) | |
| ARMANDO NAVARRETE, ANA NAVARRETE, | ) | Honorable Stuart E. Palmer, |
| and GEORGE KONJUCH, | ) | Judge Presiding |
| | ) | |
| Defendants-Appellants. | ) | |

JUSTICE MURPHY delivered the opinion of the court:

On September 11, 2006, plaintiffs, ABN AMRO Services Co., Inc., LaSalle Bank

Corporation, and LaSalle Bank NA, filed a verified complaint for injunctive relief and damages

against defendants, Navarrete Industries, Inc., doing business as INS Integrated Security

Solutions, Inc. (collectively INS), George Konjuch, and Armando and Ana Navarrete (Armando

and Ana), the sole shareholders and officers of INS.  Plaintiffs sought injunctive relief and

damages for an alleged fraud, constructive trust, and civil conspiracy carried out by defendants.

Plaintiffs alleged that defendants conducted a massive scheme that caused plaintiffs to pay

millions of dollars in fraudulent invoices to INS.  Plaintiffs allege that Konjuch then received

1-07-0089,1-07-0606 (Consolidated)

kickbacks from these fraudulent payments.

Plaintiffs also filed several motions on September 11, 2006. Following an *ex parte* hearing on that date, the trial court entered a temporary restraining order and an order of statutory prejudgment attachment (attachment order) pursuant to the Code of Civil Procedure (Code) (735 ILCS 5/4-101 *et seq.*). Following notice, expedited discovery, evidentiary hearings and argument, the trial court ultimately dissolved the TRO, denied plaintiffs' request for a preliminary injunction and denied defendants' request to vacate the attachment order. The trial court included language pursuant to Illinois Supreme Court Rule 304(a) (Official Reports Advance Sheet No. 22 (October 26, 2005), R. 304(a), eff. January 1, 2006) and defendants appeal the attachment order. For the following reasons, we reverse the findings of the trial court and remand for further proceedings. An abbreviated summary of the facts of this case sufficient to answer the relevant question on appeal follows.

I. BACKGROUND

In August 2006, plaintiffs received allegations that Armando and Konjuch were engaged in a fraudulent billing scheme through INS relating to security services provided to Chicago area LaSalle Bank branches. INS had provided security services to plaintiffs beginning in the 1990s and continuing through the date of this action. Matthew Kutas, a fraud investigator for plaintiffs, undertook an investigation of the allegations involving Konjuch, who was first vice president of physical security at that time.

As a result of Kutas' investigation, plaintiffs filed a verified complaint on September 11, 2006, attaching an affidavit by Kutas that detailed his findings to date. Plaintiffs asserted claims of fraud, civil conspiracy and constructive trust against all defendants and breach of fiduciary

2

duty against Konjuch. They alleged that they were defrauded of more than $15.9 million through defendants' scheme of fraudulent invoices and kickbacks. Plaintiffs contemporaneously filed motions for a temporary restraining order, a preliminary injunction, and an order of statutory prejudgment attachment, and memoranda of law in support of their motions.

Also on September 11, 2006, the trial court reviewed the verified complaint, motions and Kutas' affidavit, and conducted an *ex parte* hearing. Kutas was not available to testify and only plaintiffs' counsel and a bank representative were before the court. The trial court found that, due to the sophisticated nature of the alleged fraud and fear that defendants would attempt to abscond with their proceeds from their scheme, proceeding on the motions *ex parte* was proper. The trial court opined that plaintiffs had presented a sufficient case in support of the requested prejudgment attachment and temporary restraining orders. Prior to entering the orders, the trial court inquired as to whether plaintiffs had secured an attachment bond. Plaintiffs' counsel responded that they were in the process of securing a bond and that it could be filed later that day. The trial court entered the attachment order. The attachment bond was filed later that day.

Defendants received notice and copies of the trial court's *ex parte* orders on September 12, 2006. Defendants filed motions to vacate the attachment and temporary restraining orders, arguing *inter alia* that the attachment order was void due to the failure of the plaintiffs and the trial court to comply with the Code. The trial court allowed expedited discovery and an initial five days of hearing were held for plaintiffs to present their evidence between October 12, 2006, and October 19, 2006. Konjuch and Navarette each exercised their privilege against self-incrimination and did not testify. Following the end of the hearings on plaintiffs' case on October 19, 2006, the trial court found that plaintiffs had presented a prima facie case of fraud

3

and met the requirements of paragraphs 7 and 8 of section 4-101 of the Code (735 ILCS 5/4-101 (West 2004)) to support the attachment order.

The trial court dissolved the temporary restraining order and dismissed plaintiffs' motion for a preliminary injunction. The trial court also heard arguments on Konjuch's motion for a directed finding on the motion to quash the attachment order. The trial court denied that motion. A written order memorializing these findings was entered on October 23, 2006.

Further hearings were held in November 2006 for defendants to present their own witnesses. As noted above, Konjuch and Armando declined to testify. INS employees and financial experts testified for defendants and Konjuch also recalled Kutas to testify in his case. Following presentation of a certified fraud examiner as their rebuttal witness, plaintiffs rested. The trial court denied defendants' motions to vacate the attachment order. The trial court included language pursuant to Rule 304(a) that there was no just reason to delay appeal in its December 21, 2006, order. These consolidated appeals followed.

## II. ANALYSIS

Defendants assert several issues on appeal, however, this case may be disposed of based on the plain language of the Code and examination of Konjuch's motion to vacate the attachment order. Konjuch argued that the attachment order was void for the trial court's failure to examine any witness under oath regarding the amount required for bond and for plaintiffs' failure to file an attachment bond before the order was entered. While case law is limited on this issue, Konjuch argues that the cases that have examined the issue and the plain language of sections 4-104 and 4-107 of the Code clearly require reversal of the attachment order. We review *de novo* the issue of the proper construction and interpretation of a statute in considering the issue of the

4

1-07-0089,1-07-0606 (Consolidated)

filing of the attachment bond in this case. *Lucas v. Lakin*, 175 Ill. 2d 166, 171 (1997).

Section 4-107 reads in full:

"Bond. Before the entry of an order for attachment, as herein above stated, the court shall take bond and sufficient security, payable to the People of the State of Illinois, for the use of the person or persons interested in the property attached, in double the sum sworn to be due, conditioned for satisfying all costs which may be awarded to such defendant, or to any others interested in the proceedings, and all damages and costs which shall be recovered against the plaintiff, for wrongfully obtaining the attachment order, which bond, with affidavit of the party complaining, or his, her or its agent or attorney, shall be filed in the court entering the order for attachment. Every order for attachment entered without a bond and affidavit taken, is hereby declared illegal and void, and shall be dismissed. Nothing herein contained shall be construed to require the State of Illinois, or any Department of Government thereof, or any State officer, to file a bond as plaintiff in any proceeding instituted under Part 1 of Article IV of this Act." 735 ILCS 5/4-107 (West 2004).

Konjuch argues that the "clear and unequivocal language" of this section provides the mandatory command to file a bond in that amount before an attachment order is entered. Konjuch argues that the legislature could not have been clearer in wording this statute if a bond is not filed before entry of an attachment order, the order is to be declared "illegal and void, and shall be dismissed." Konjuch argues that attachment of one's property, especially *ex parte*, is an extraordinary remedy and requires strict adherence to the statute.

5

Konjuch notes that this court has stated that the purpose of section 4-107 is to protect the debtor. *Western Smelting and Refining Co. v. Benj. Harris and Co.*, 302 Ill. App. 535, 542 (1939). The *Western Smelting* court concluded that the trial court in that case did not have jurisdiction to enter an attachment order because the plaintiff did not comply with the statute and did not have a bond filed. *Western Smelting*, 302 Ill. App. at 543-44. The court further noted that if a creditor were allowed to secure an attachment order without filing a bond, "there would be grave danger of fraud" and open the debtor to harms that the statute was intended to prevent from occurring. *Western Smelting*, 302 Ill. App. at 543.

Plaintiffs respond that Konjuch waived these "alleged procedural errors" by failing to raise them in the trial court. However, plaintiffs also later note that the failure to timely file bond was Konjuch's first argument in his motion to vacate the attachment order. While the record supports plaintiffs' argument that Konjuch did not fully develop this claim in a memorandum of law or during oral argument, the fact remains that the argument was raised and rejected. Furthermore, the issue of voidness may be raised directly or collaterally so long as it is raised within a proceeding properly pending in the courts. *Universal Underwriters Insurance Co. v. Judge & James, Ltd.*, 372 Ill. App. 3d 372, 383 (2007). As noted above, this matter is properly before this court on appeal and the issue of voidness may be considered. Accordingly, discussion must turn to plaintiffs' other arguments that Konjuch's argument fails.

Plaintiffs assert that the challenges to the initial attachment order are moot because of the subsequent actions in the trial court. Plaintiffs state that an appeal is moot when there is no actual controversy or that no effectual relief may be granted to the complaining party. *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 522-23 (2001). Plaintiffs argue that Konjuch's

claims that the attachment order is void is moot because the trial court also entered the temporary restraining order at the same time, freezing the same funds. Accordingly, plaintiffs conclude that affirming the attachment order after a full evidentiary hearing and argument renders challenges to the initial *ex parte* order moot.

Plaintiffs also argue that the plain language of the Code supports their mootness argument. Plaintiffs highlight that section 4-132 of the Code provides that, subject to the prompt hearing requirements of the Code, no attachment order "shall be vacated . . . on account of any insufficiency of the original affidavit, order for attachment or attachment bond, if the plaintiff, or some credible person for him, her or it shall cause a legal and sufficient affidavit or attachment bond to be filed, or the order to be amended, in such time and manner as the court shall direct; and in that event the cause shall proceed as if such proceedings had originally been sufficient." 735 ILCS 5/4-132 (West 2004). Plaintiffs argue that this language demonstrates that the legislature understood that this type of proceeding would often be executed on an emergency basis and, as such, errors would occur that could, and should, be cured by amendment.

In addition, plaintiffs argue that with the additional evidence provided during the hearings, the doctrine of aider by verdict renders these challenges moot. The doctrine of aider by verdict provides that if a party allows an action to proceed to verdict, the verdict cures technical and clerical errors as well as defective allegations of essential facts. *Adcock v. Johnson*, 164 Ill. 2d 54, 60-61 (1994). Therefore, plaintiffs argue that the full hearings and final attachment order precludes review of any alleged procedural or technical defects.

Finally, plaintiffs argue that Konjuch's alleged procedural arguments misstate the law and fail to allege any prejudice. Plaintiffs argue that litigants are not entitled to error-free trials and a

party asserting an error must demonstrate the error affected the outcome with a clear showing of prejudice. *Simmons v. Garces*, 198 Ill. 2d 541, 566-67 (2002). Plaintiffs continue to argue that the circuit court is vested with general jurisdiction pursuant to the Judicial Article of 1962 and the Illinois Constitution of 1970. Thus, there were no jurisdictional obstacles as the instant matter is a justiciable issue. See *McGinnis Plumbing Co. v. Zeus Development Corp.*, 119 Ill. App. 3d 1096, 1099 (1983), quoting *In re Estate of Mears*, 110 Ill. App. 3d 1133, 1138 (1982) (" 'No longer do we seek justification for the exercise of jurisdiction; rather the inquiry must be whether there exists a justiciable controversy, and if so, are there any statutory conditions precedent to judicial intervention.' "). Accordingly, plaintiffs argue that Konjuch and the other defendants' framing of issues as jurisdictional is incorrect and the failure to show any prejudice from filing the bond after entry of the attachment order requires affirming the trial court.

Plaintiffs contend that section 4-107 of the Code "merely states that '[b]efore the entry of an order for attachment, as herein above state, the court shall take bond . . . for the use of the person or persons interested in the property attached, in double the sum sworn to be due. 735 ILSC [*sic*] 5/4-107.' " They continue to argue that section 4-108 provides an alternative *ex parte* procedure of fixing the bond at a lower value based on a value of attached property that is lower than the amount sworn due. Accordingly, plaintiffs conclude that the Code does not even require fixing the bond before entering an attachment order in *ex parte* proceedings and Konjuch has relied upon the wrong section of the Code.

First, we must note that the Code requires construing the statute in "the most liberal manner for the detection of fraud." 735 ILCS 5/4-102 (West 2004). Despite that mandate, undertaking a liberal construction of a statute does not allow a court to ignore unequivocal and

8

plain language within that statute. The language of section 4-107 clearly requires filing of bond prior to entry of an attachment order. Every order that is entered without such a bond filed "is hereby declared illegal and void, and shall be dismissed." 735 ILCS 5/4-107 (West 2004). It is impossible to read this out of the statute as plaintiffs have argued.

Because section 4-108 follows section 4-107, it does not mean that the preorder filing requirement is removed. This court has found that it is apparent that section 4-108 is simply for the benefit of a creditor with a claim larger than the value of property that is being attached and must be read in conjunction with section 4-107. *Old Kent Bank v. Stoller*, 254Ill. App. 3d 1085, 1098 (1993). Section 4-108 provides an alternative method of *fixing* the bond, not filing the bond. Accordingly, construing the sections in conjunction, the filing requirement remains and section 4-108 simply provides a plaintiff with the protection of securing a lower bond when the attached property value warrants.

While aider by verdict avoids the waste of judicial and party resources as argued by plaintiffs, they also note that it is limited to when the defect argued could have been cured by amendment. *Pieszchalski v. Oslager*, 128 Ill. App. 3d 437, 444 (1984). The statute also provides for this type of scenario in section 4-132. However, Konjuch's key claim is that the attachment order was entered prior to the filing of bond and plaintiffs cannot amend something that does not properly exist.

The plain language of the statute requires the dismissal of the order as void when an order is entered without prior filing of sufficient bond. The plain language does not allow for amendment to cure the fatal failure to file bond before entering the order. " '[I]f a statute prescribes in terms that acts or proceedings shall be void if they are not done in the manner set

9

out in the statute, the statutory prescription is obviously mandatory.' " *Havens v. Miller*, 102 Ill. App. 3d 558, 566 (1981) quoting 2 A. Sutherland, Statutory Construction § 57.08 at 423 (4th ed. 1973).

We are mindful of our supreme court's recent admonishments that courts must declare an order void only when no other alternative is possible " 'because of the disastrous consequences which follow when orders and judgments are allowed to be collaterally attacked . . . ' " *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 341 (2002), quoting *In re Marriage of Vernon*, 253 Ill. App. 3d 783, 788 (1993); see also, *Ford Motor Credit Co. v. Sperry*, 214 Ill. 2d 371, 380 (2005); *J.S.A. v. M.H.*, 224 Ill. 2d 182, 211 (2007). These cases each considered the vast jurisdiction granted to our circuit courts by the Illinois Constitution of 1970 as highlighted by plaintiffs and their quote of *McGinnis Plumbing Co.* However, plaintiffs quoted this expansive take on jurisdiction to summarily dismiss Konjuch's voidness argument and jump to an assertion that Konjuch must prove that he was prejudiced by the procedural failure. We obviously disagree that the plain language may be overcome and that some "other alternative is possible."

As detailed in *Western Smelting*, without requiring this procedure, allowing an attachment creditor to wait to file bond would itself open up a grave danger of fraud. *Western Smelting*, 302 Ill. App. at 543. The bond is for the protection of the debtor in the event of judgment against the creditor. The *Western Smelting* court also opined that the intent of section 4-132 was to allow an attachment creditor to cure clerical and other deficiencies in the bond "where there has been a bona fide attempt to comply with the statute." *Western Smelting*, 302 Ill. App. at 543.

Unfortunately, the result of declaring the order void results in a waste of resources in this

10

case. While plaintiffs clearly attempted to comply with the statute, they failed to do so. This issue could not be resolved by simple amendment because of the absolute mandatory command of the statute, therefore the mootness and aider by verdict doctrines do not apply. The order is simply void. A liberal construction of the Code cannot cure this defect and the order must be dismissed. The legislature had a clear and valid reason for providing this strict procedural requirement and denying a collateral attack in this instance could open up the possibility of future collateral arguments that would eviscerate the protections provided to debtors by the legislature.

### III. CONCLUSION

For the foregoing reasons, we reverse the decision of the trial court and remand for further proceedings.

Reversed and remanded.

NEVILLE, P.J., and CAMPBELL, J., concur.